Edward C. Alexion, as President of Association of Motor Vehicle Salesmen of Greater New York and Vicinity, Respondent, *v.* Leslie W. Hollingsworth et al., Appellants.

Argued June 9, 1942; decided July 29, 1942.

*Simon J. Liebowitz* and *Samuel Sumner Goldberg* for appellants. Plaintiff never established its exclusive right to the use of the name, and in fact succeeded in establishing that the name was the property of those who refused to secede from the international. (*Nilan v. Colleran,* 283 N. Y. 84; *Goller v. Stubenhaus,* 77 Misc. Rep. 29; *United Gold & Platinum Mines Co.* v. *Smith,* 44 Misc. Rep. 567; *Ostrom v. Greene,* 161 N. Y. 353; *Kehoe v. Leonard,* 176 App. Div. 626; *Green v. Gravatt,* 19 Fed. Supp. 87; *Local No. 7 of Bricklayers* v. *Bowen,* 278 Fed. Rep. 271; *Gardner v. Newbert,* 74 Ind. App. 183; *Neal v. Hutcheson,* 160 N. Y. Supp. 1007; *Brownfield v. Simon,* 94 Misc. Rep. 720; 174 App. Div. 872; 225 N. Y. 643; *Steinmiller* v. *McKeon,* 261 App. Div. 899; 288 N. Y. 508; *Low v. Harris,* 90 Fed. Rep. [2d] 783; *Lumber & Sawmill Workers Union* v. *International Wood Workers of America,* 85 Pac. Rep. [2d] 1099; *McFadden* v. *Murphy,* 149 Mass. 341; *Henry v. Cox,* 25 Ohio App. 487.)

*Joseph Brill* and *Abraham J. Brill* for respondent. Plaintiff owned the name " Association of Motor Vehicle Salesmen of Greater New York and Vicinity " when it became a constituent of the international, and, thereafter, continued to own that name, and had complete rights to such name on seceding from the international. (*Wells* v. *Monihan,* 129 N. Y. 161; *Kelso* v. *Cavanagh,* 137 Misc. Rep. 653; *World Trading Corp.* v. *Kolchin,* 166 Misc. Rep. 854; *Wicks* v. *Monihan,* 130 N. Y. 232.)

LEHMAN, Ch. J.  In the early months of 1937 a group of men, employed as salesmen of new and used automobiles in Greater New York, organized an unincorporated association (hereinafter referred to as the Association) for the purpose of improving working conditions for automobile salesmen and securing better wages, hours and conditions of employment by collective bargaining with their employers.  In December, 1937, a charter was granted by Retail Clerks International Protective Association (hereinafter referred to as the International), affiliated with the American Federation of Labor, to certain members of the Association and " to their successors legally qualified to constitute the Union herein named and known under the title of Association of Motor Vehicle Salesmen of Greater New York and Vicinity Local No. 1415, for the purpose of a thorough organization of the retail clerks of the City of New York."  The charter provided, " that the said Union do conform to the Constitution, Laws and Rules of The Retail Clerks' International Protective Association, and in default thereof, or any part, this Charter may be suspended or revoked according to the laws of the International Association.  And should the said Association of Motor Vehicle Salesmen be dissolved, suspended, or forfeit this Charter, then the persons to whom this charter is granted, or their successors, bind themselves to surrender the same with such other property as shall properly belong to the International Association."

After the charter was granted, the Association which had received and accepted a charter from the International, had no existence independent of the local union, and its members pursued the labor objectives, for which the Association had been formed, only as members of that local union.

The local union included residents of Westchester county as well as of New York City.  The union in 1940 conducted a strike

against the Brown-Buick Company, Inc., an automobile dealer in White Plains, Westchester county. The strike was settled by arbitration and the Brown-Buick Company was directed to pay $1,700 to the local union. The employees of the Brown-Buick Company, Inc. claimed that they were entitled to the proceeds of the check for that amount received by the union. A bitter controversy arose within the union in regard to that and other matters. The members of the local who were employed in Westchester county complained to Nathan Wertheimer, the Eastern representative of the International, that the officers of the local union were discriminating against them, and were applying to their own purposes the proceeds of the check which should be distributed among the Westchester members. Wertheimer espoused their cause and acted as their spokesman.

The members of the local union in Westchester county threatened to withdraw from the union. Wertheimer wrote to Alexion, as " manager " of the local union, a letter dated February 6, 1941, in which he stated, among other things: " I also wish to reiterate that the International is granting a separate charter for Westchester, to which Local Union all of the Brown Buick employees will be transferred. The issuing of this charter is being held in abeyance as per our conversation until the International will hear your objection to it. You may do so in writing direct to Brother C. C. Coulter or if possible meet in conference with our Secretary-Treasurer at Lafayette Indiana."

While recriminations were being exchanged between the officers of the local and Wertheimer, the representative of the International, Wertheimer mailed to the members of the local a notice of a meeting to be held in the Normandie Room of the Hotel Capitol in New York City at ten P. M. on February 19, 1941. The notice stated, " It is urgent that each and every member affiliated with the Retail Clerks International Protective Association, A. F. of L. attends to this meeting. Matters of vital importance will be recommended by the International through its Eastern representative, Nathan Wertheimer. An organization program will also be adopted at this meeting, and all other matters which may come up for discussion will be enacted."

A large majority of the members of the local union who attended or attempted to attend the meeting called by Wertheimer belonged to the faction which supported the officers of the local union and were opposed to Wertheimer. A vice-president of the local union occupied the chair at the meeting and refused to permit Wertheimer to preside and, it is said, excluded Wertheimer and members of the opposing faction from the meeting. The minutes of the meeting show that the first business of the meeting was the presentation of charges against twenty-three members of the local union reciting that they " have been and are engaging in activities which are inimical to the best interests of our local " and that they are " aiding, abetting and supporting forces which intend to split our local and to divide its forces," and have been guilty of conduct and acts in violation of provisions of the constitution of the International. A panel of members to try these charges was then selected and instructed to proceed, according to the constitution and by-laws, to give a fair and impartial trial to the defendants. A resolution was then adopted that " pending the trial of the charges which have just been received, the persons named in the said charges shall stand suspended from all of their membership rights in our union and as members of our union, pending their trial on the said charges." (Sic) Charges were then presented against Nathan Wertheimer to be forwarded to the " international secretary-treasurer " of the International. Then a resolution was presented that the " local union shall and does hereby secede and leave its affiliation with the Retail Clerks International Protective Association * * * that from now and henceforth our local union shall continue as a trade union, to be known as the Association of Motor Vehicle Salesmen of Greater New York and Vicinity, and remain as an independent union until such time as by warrant of fact and benefit of developments it may be determined by the membership to otherwise affiliate; and be it further

" RESOLVED, that our union continue to keep in force and effect the contracts, protecting our membership in the various places of employment as they may now be employed, as they may now be in force and effect as written; that we do hereby ratify and adopt and continue the same as made by our local union in behalf of our membership as aforesaid; and be it further

" RESOLVED, that all new contracts, documents, papers and other identifications pertaining to our local union shall henceforth be in the name and style of the Association of Motor Vehicle Salesmen of Greater New York and Vicinity; * * *."

According to the minutes " the Resolution was met with tumultuous cheers and enthusiastic applause." Mr. Wertheimer protested on various grounds and left the meeting. Thereafter the motion was unanimously adopted by those present at the meeting. Some of the members of the local union who were not present at the meeting have approved the resolution of secession and have adhered to the seceding faction. Members of the local union who belonged to the faction which had complained to Wertheimer and had asked his aid, including the twenty-three members who were suspended upon charges presented at the meeting when the vote was taken, have challenged the validity of the resolution of secession and they claim that they constitute the " Association of Motor Vehicle Salesmen of Greater New York and Vicinity Local No. 1415 " and that they alone are entitled to the benefit of the collective agreement negotiated by the local union, and that the seceding group are wrongfully withholding from them contracts and property belonging to the local union.

The plaintiffs represent the seceding group of the local union and they have brought an action against the defendants, who claim to be members of the local union. In their complaint they ask that judgment restraining the defendants from using the name " Association of Motor Vehicle Salesmen of Greater New York and Vicinity," from representing that the Association is affiliated with Retail Clerks International Protective Association, and from representing that the plaintiff Edward C. Alexion is not the president of the Association. Judgment in favor of the plaintiffs, granting them relief which, in some important respects, exceeds the relief asked for in the complaint, has been unanimously affirmed by the Appellate Division.

Section 22 of the constitution of the International provides, among other things, that " a Local Union cannot withdraw from the International Association or dissolve, so long as seven members in good standing object thereto." The local union having received and accepted a charter from the International which provides that

the local must conform to the constitution, laws and rules of the International, the local union and its members are bound by the provisions of the constitution forbidding secession when more than six members object. (*Brownfield* v. *Simon*, 94 Misc. Rep. 720; affd., 174 App. Div. 872; affd., 225 N. Y. 643; *Nilan* v. *Colleran*, 283 N. Y. 84.) There can be no doubt that the members of the local union who have been suspended upon charges object, and have always objected, to the proposed secession of the local union from the International. There is conflict in the testimony as to whether the members so suspended attempted to attend and vote at the meeting where the resolution of secession was adopted. All disputed questions of fact have been resolved in favor of the plaintiffs by the findings and decisions of the justice who tried the case. Whether or not the defendants did attempt to attend and vote at the meeting is, however, immaterial. The mandate of the constitution that no local may withdraw from the International so long as seven members object cannot be evaded by suspending upon charges, members of the local union who might object, and depriving them of their membership rights without a trial, and then while members of the union opposed to withdrawal are thus deprived of a right to object, adopting the resolution at a meeting convened upon notice which gives no warning that a resolution of secession would be presented. The resolution of withdrawal, it is plain, does not comply with the conditions required under the constitution to give force to it. More than seven members do object.

The original unincorporated association ceased to function when its members received and accepted the charter as a local union from the International. Thereafter, by their own choice the Association acted as a constituent association of the International. The charter granted by the International became a contract which determined the rights and duties of the constituent society and its members. " As the contract may prescribe the precise terms upon which a membership may be gained, so may it conclusively define the conditions which will entail its loss." (*Polin* v. *Kaplan*, 257 N. Y. 277, 281.) The rights of the defendants as members of the local union cannot be lost except in the manner permitted by the contract from which these rights spring. These rights include the right to use the name of the local union and to glean the benefit

derived from collective agreements made by the local union. The question is not before us whether the seceding members of the local union may also use the name under which they transacted their affairs before they received a charter as a local union. Nor do we decide at this time whether the plaintiffs may, under the circumstances described in this case, object to discharge by their employers because they have ceased to be members of the local union with which the employer has made the collective agreement. We decide only that the right of the plaintiffs to the use of the name, if they have any right, is certainly not exclusive and the complaint in this action for an injunction against the defendants on the ground that the defendants are using that name wrongfully must be dismissed.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.