UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA ET AL. v. WILLIAM LAWLOR ET AL.

HONORABLE ERNEST A. INGLIS, A JUDGE OF THE SUPERIOR COURT

Memorandum filed April 9, 1948.

*Gruber & Turkel,* of Stamford, for the Plaintiffs.

*William S. Zeman,* of Hartford, for the Defendants.

INGLIS, J. This application is made in an action in which the United Electrical, Radio and Machine Workers of America, affiliated with C.I.O., hereinafter referred to as U. E., and Unity Lodge Local 251, United Electrical, Radio and Machine Workers of America, hereinafter referred to as Local 251, are the plaintiffs, and various individuals who were formerly officers of Local 251 are the defendants. Some question has been raised by the defendants whether Local 251 has authorized the institution of the action on its behalf, but as to this complete reliance must be placed on the reperesentation made by the commissioner of the Superior Court who signed the writ, which representation is necessarily implied from his signing it, that the suit is authorized. In any event the question is academic because the relationship between Local 251 and U. E. is such that the latter has a standing to maintain this suit and demand whatever remedies Local 251 is entitled to. *National Circle* v. *Hines,* 88 Conn. 676.

Local 251 is a labor union the members of which are employees of the Niles-Bement-Pond Company, which union since 1938 has been affiliated with U. E. and has held a charter granted to it by U. E. That charter provided that "It is hereby agreed in the acceptance of this charter that the aforesaid union shall conform to the constitution rules and regulations of the United Electrical, Radio and Machine Workers of America (U. E.)" and there was a provision in the constitution of Local 251 to the same effect. The dues of each of the members of Local 251 were fixed at $1.50 per month and of this amount, it was provided in both the Local 251 constitution and the U. E. constitution, fifty cents was to be paid as a so-called per capita to U. E. There were other charges which might be made against the members of Local 251 of which various proportions were to be remitted to U. E. Each of the members of Local 251 was by virtue of his membership a member of U. E. The constitution

of U. E. (Article 18, Section O) provided: "Any disbandment, dissolution, secession or disaffiliation of any local shall be invalid and null and void if seven or more members indicate their desire to retain the local charter."

A duly warned meeting of Local 251 was held on March 19, 1948. At that meeting, after it had been voted that the union office equipment be sold for $300 and that $3,000 be given to the Greater Hartford Industrial Union Council, it was voted (with only two negative votes) to assign the agreement dated November 4, 1947, between Niles-Bement-Pond Company and Local 251 to Amalgamated Local 405 of the International Union of United Automobile, Aircraft and Agricultural Implement Workers of America, hereinafter referred to as Local 405, U. A. W., and the assignment was immediately executed. It was next voted, with no negative vote, to assign the checkoff rights under that agreement to Local 405, U. A. W., and that assignment was also immediately executed. Then it was voted, two votes in the negative, to disaffiliate Local 251 from the U. E. and to sever all connections with the U. E. The next vote adopted, with only three votes in the negative, was to affliliate Unity Lodge to Amalgamated Local 405, U. A. W. and to transfer said Unity Lodge and its membership to said Amalgamated Local 405, U. A. W., as a manufacturing unit of that amalgamated local, in accordance with the constitution of the International Union of U. A. W. And, finally, it was voted that all present officers of Local 251 "continue to serve as the same officers of Unity Lodge now a manufacturing unit of` Amalgamated Local 405" provided each officer will sign a transfer card to Amalgamated Local 405 and also will sign the non-Communist affidavits required by the Taft-Hartley Act. Since that vote none of the defendants has made any claim to be an officer of Local 251.

Just prior to the said meeting the assets of Local 251 consisted of the office furniture, for which a check for $300 had been received, a bank balance of approximately $4090 - (of which $1000 was used to pay indebtedness of the union and $3000 was turned over to the Greater Hartford Industrial Union Council, leaving a balance of about $90) and the agreement with Niles-Bement-Pond Company. Local 251 was indebted to U. E. in an amount in excess of $1500. It had a membership of about 1600, of whom 1400 had authorized the checkoff of their dues by the employer. Of these, at the time

of the hearing approximately 1150 had signed transfer cards and assignment of checkoff to Local 405 U. A. W. At the hearing eight members of Local 251 testified that it was their desire to retain the charter granted by U. E.

The plaintiffs seek a temporary injunction restraining the defendants from dissipating or expending any of the funds or property of Local 251, and from interfering in any manner with the collective bargaining contract with the Niles-Bement-Pond Company, and, in particular, exercising any claimed right to act as bargaining agent under that contract and interfering with the right of Local 251 to receive the checkoff of union dues under the contract, and directing the defendants to restore the assigned contract with the Niles-Bement-Pond Company to Local 251. There are several other prayers for temporary relief, but except as they are involved in the prayers already outlined they deal with matters which are de minimis.

Upon an application for a temporary injunction no final determination of the rights and duties of the parties is proper. Accordingly, the conclusions reached in this memorandum as to those rights and duties are only tentative and solely for the purpose of passing upon this application. Moreover, it is to be borne in mind that the sole function of a temporary injunction is to keep matters in status quo, so far as may be, pending the final determination of the rights and duties of the parties.

The charter issued to Local 251 and the constitution of Local 251 constituted a compact among the members of that Local and between that Local and U. E.

The constitution of U. E. was incorporated by reference into that compact. By virtue of the compact the purported disaffiliation or secession was a nullity. Local 251 still remains in existence as an entity consisting of the eight or more members who wish to adhere and it still is a union affiliated with U. E. This is true even though the minority did not indicate their dissent from the secession at the meeting at which the secession was voted. *Low* v. *Harris*, 90 F. 2d 783. It is well established that under such circumstances the seceding majority may not take the property of the union with them nor may they divert that property to any purpose other than the purposes of the original union. The assets remain the property of the union even though the membership of that union is only a small minority of the membership as it was before the secession. *M & M Wood Work-*

ing Co. v. *National Labor Relations Board*, 101 F. 2d 938; *Alexion* v. *Hollingsworth*, 289 N. Y. 91; *McFadden* v. *Murphy*, 149 Mass. 341; *Schriner* v. *Sachs*, 253 Pa. 611; *Local No. 2508* v. *Cairns*, 197 Wash. 476. Accordingly, the property rights in all of the assets of Local 251 remain with that organization even though the majority of its membership has seceded.

Those property rights in all of the assets of Local 251 except the contract with Niles-Bement-Pond Company have been pro- tected by a temporary injunction entered by stipulation restrain- ing the defendants from dissipating those assets. There remains for consideration, therefore, only the question as to what should be done by way of temporary injunction to protect the rights of Local 251 in that contract. There may be some question whether the contract is of such a nature that it is assignable but that is a question not involved in this action. In any event, it has been assigned. If for no other reason than that the assignee of the contract, Local 405, U. A. W., is not a party to this action, its reassignment to Local 251 cannot be compelled.

The contract between Local 251 and Niles-Bement-Pond Company has a triple aspect. In the first place it provides that the employees of Niles-Bement-Pond shall have various rights with reference to conditions of their employment. Secondly, it recognizes Local 251 as the bargaining agent of those employees to enforce their rights under the contract by grievance proce- dure and by negotiation. Finally, it provides for the checkoff of union dues by the employer. It is to be noted that the contract, so far as the first two of these aspects are concerned, vests no substantive rights in Local 251 as an entity. The substantive rights with reference to conditions of employment are with the employees of Niles-Bement-Pond Company, whether they are members of the union or not. And even though all of the em- ployees were members of the union the rights would be theirs as individual employees rather than the union's Although the contract is made with the union it is made solely for the benefit of the employees. The second aspect of the contract simply recognizes that Local 251 is the agent of the employees. As such it, as an entity, is given no beneficial interest. It simply has a duty to perform.

With those considerations in mind it is apparent that both the National Labor Relations Act of 1935, as amended in 1947, and the Connecticut Injunctions in Labor Disputes Act (Gen- eral Statutes, Cum. Sup. 1939, Chap. 309a) have a bearing on the question of what if any injunctive relief may be granted.

The National Labor Relations Act reads: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees of a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment." 49 Stat. 453, § 9 (a), 29 U. S. C. § 159 (a). It then goes on to provide: "Whenever a petition shall have been filed . . . (A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees . . . (ii) assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in section 9 (a) . . . the Board shall investigate such petition, and if it has reasonable cause to believe that a question of representation affecting commerce exists, shall provide for an appropriate hearing upon due notice . . . If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof." Pub. Law, 101, 80th Cong., 1st Sess. Chap. 120, § 9 (c).

In the present case, if Local 251 continued to act as bargaining representative of the employees of Niles-Bement-Pond it is extremely likely that the vast majority of those employees would, pursuant to the foregoing provisions of the act, petition the National Labor Relations Board for an election which might result in the designation of another bargaining representative. Although it is true that the substantive rights fixed by the present contract would continue in the respective parties during the remainder of the term of the contract, that does not prevent a change in the bargaining representative during that term. *Triboro Coach Corporation* v. *Labor Relations Board*, 286 N. Y. 314; note, 144 A. L. R. 444, 468. There can be no question but that the National Labor Relations Board has the power to determine who the bargaining representative of the employees of Niles-Bement-Pond shall be.

More than that, it has the exclusive jurisdiction to resolve that question. As is said in *Fur Workers Union, Local 72* v. *Fur Workers Union*, 105 F. 2d. 1, 12: "It is true that the Act does not in express terms make the certification power of the Board exclusive. But this nevertheless seems to us to be the plain intent

of the Act, and we think that to give it a contrary construction would be inconsistent with the development of labor legislation and the legislative history of the Act itself . . . Certainly Congress in the Act did confer upon the Board the power to determine what is the appropriate and lawfully selected collective bargaining unit for employees. And we should not, unless upon consideration of the Act and its language and purpose, we find it mandatory to do so, put such a construction thereon as would result in the anomalous existence of concurrent initial jurisdiction in both the courts and the Board."

Inasmuch as the National Labor Relations Board has exclusive jurisdiction to determine who the bargaining representative for the employees of Niles-Bement-Pond Company shall be in the future, it would be improper for this court to do that same thing by indirection by means of a temporary injunction. No temporary injunction should issue restraining the defendants either from acting through Local 405, U. A. W., as the bargaining representative of the employees of Niles-Bement-Pond Company, or from interfering with Local 251, continuing to act as such. Whatever question may arise as to who is the proper bargaining representative for those employees must be settled by the National Labor Relations Board. *International Brotherhood of Teamsters* v. *International Union of United Brewery, etc. Workers,* 106 F. 2d 871; *Myers* v. *Bethlehem Shipbuilding Corporation,* 303 U. S. 41, 82 L. Ed. 638.

Turning now to a consideration of the bearing on this case of the state act relating to injunctions in labor disputes, the first question is whether what is involved in this action is a labor dispute. The act defines a labor dispute as follows: "(c) the term 'labor dispute' shall include any controversy concerning terms or conditions of employment, *or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment* or concerning employment relations, or any controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the proximate relation of employer and employee." (Italics added). General Statutes, Cum. Sup. 1939, § 1420e. The same section provides that a case shall be held to involve or grow out of a labor dispute when it involves persons who are engaged in the same industry or who are employees of the same employer if it is between one or more employees or associations of employees and one or more employees or associations of employees.

The cases involving the question of what is or is not a labor dispute under similar statutes in other jurisdictions are well collected in notes at 138 A. L. R. 287 and 160 A. L. R. 544. It seems to be well settled that controversies as to the right of an individual to be or remain a member of a labor union, as to the right of an individual to an office in a labor union, and as to the right of a national or international union to revoke the charter of a local are not labor disputes. On the other hand, controversies between rival unions as to which has jurisdiction to organize a given set of employees or to represent them are held to be labor disputes. *Green* v. *Obergfell*, 121 F. 2d 46; *Blankenship* v. *Kurfman*, 96 F. 2d 450; *International Brotherhood of Teamsters* v. *International Union of United Brewery, etc. Workers*, 106 F. 2d 871; *Lauf* v. *Shinner & Co.*, 303 U. S. 323.

The present case, insofar as it turns on the question which of two rival unions is entitled to be the bargaining representatives to enforce the benefits given to the employees under the contract with Niles-Bement-Pond Company, is a controversy "concerning the association or representation of persons in . . . maintaining, changing or seeking to arrange terms or conditions of employment or concerning employment relations." It is therefore a labor dispute under the act.

The Injunctions in Labor Disputes Act provides, in section 1423e, that "No court shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute as defined in section 1420e, . . . except after a finding of facts by the court to the effect: . . . (b) that substantial and irreparable injury to the complainant or his property will follow; (c) that as to each item of relief granted greater injury would be inflicted upon complainant by the denial of relief than would be inflicted upon defendants by the granting of relief."

Insofar as the contract with Niles-Bement-Pond Company confers substantive rights upon the employees of that company, as is pointed out above, it vests no substantial rights in Local 251 as an organization. In the same manner, insofar as it recognizes Local 251 as the bargaining representative of those employees, it vests no substantail rights in the union as an organization. On the contrary, it merely imposes a duty on Local 251. Accordingly, it would be impossible to make a finding that so far as these particulars are concerned the assignment of the contract has affected any substantial rights of the plaintiffs.

And for that reason it would be impossible to make a finding that as to those particulars substantial and irreparable injury to the complainants will follow from the assignment of the contract. Indeed, with the vast majority of the employees of Niles-Bement-Pond Company having seceded from Local 251 and become members of a manufacturing unit of Local 405, U. A. W., the most natural bargaining representative of those employees is Local 405, U. A. W. Any change in that situation would cause at least as much injury to the defendants as the denial of it would cause the plaintiffs. Accordingly, on both grounds mentioned in this paragraph the court under the act has no jurisdiction to issue an injunction in any form designed to prevent the defendants or the assignees of the contract from acting as bargaining representatives under the assigned contract.

Insofar as the contract with Niles-Bement-Pond provides for a checkoff of dues the situation is quite different. The provisions of the contract on this subject are as follows (Article I, Section 6) : "The Company agrees to deduct monthly from earned wages and remit to the local union dues in the amount of $       per month of those employees who voluntarily authorize such deduction in writing. Such deduction will be continued for the period of one year from the date of this agreement." It is clear that this provision of the contract vests in Local 251 a substantive and substantial right. It gives to Local 251 the right to receive from Niles-Bement-Pond Company $1.50 per month for each of the 1400 employees of the Company who have signed the authorization for one year from November 4, 1947, so long as each of those employees remains an employee. There is no provision for any employee terminating his authorization before the expiration of the year. One purpose of the provision obviously is to assure to Local 251 that its rights to collect the dues of any such employee who has signed the authorization shall not be terminated by any change of mind on the part of that employee. Accordingly, the right of the Union under the contract can not be terminated as to any employee by that employee's withdrawing from the Union. This right, vested in Local 251 by contract, is a very substantial right. The controversy over who is entitled to receive the checkoff is not a labor dispute under the Injunctions in Labor Disputes Act because it has nothing to do with the question of who shall represent employees. It is purely a question of who is entitled to a fund. Accordingly, the issuance of a temporary injunction is not con-

trolled by the act but by general principles of equity. Any attempt on the part of the defendants, by virtue of the purported assignment of the contract, to collect the checkoff from Niles-Bement-Pond Company or interfere with the receipt of the checkoff by Local 251 would be, as pointed out above, an unlawful act. If they succeeded in accomplishing that, it would cause substantial and irreparable injury to the complainant for which, at least prima facie, it would appear that it would have no adequate remedy at law against these defendants. Although they prima facie are wrongdoers in attempting to defeat the rights of Local 251 under the contract, it could not sue them at law on the theory of unjust enrichment because the money would not have been paid to them but to Local 405, U. A. W. Neither Local 405, U. A. W., nor Niles-Bement-Pond Company are parties to this action so no injunction can be issued against either of them. But this court ought to do whatever can be done by way of injunction against the defendants to maintain the status quo with reference to the checkoff.

Presumably Niles-Bement-Pond Company, finding itself in the position of a stakeholder with reference to the fund due and to become due under the checkoff provision of the contract, with two rival claimants to the fund, will ultimately start an action in the nature of an interpleader. If this is done the defendants in this action ought not to be precluded from appearing in that action, stating their claims to the fund, and taking whatever steps are necessary to establish those claims. Except for that, however, they should be enjoined temporarily from in any way interfering with the right of U. E. Local 251 to receive the checkoff of union dues under the provisions of the contract with Niles-Bement-Pond Company.

A temporary injunction may issue restraining the defendants from interfering with the right of U. E. Local 251 to receive the checkoff of union dues under the provisions of the contract of November 4, 1947 between Niles-Bement-Pond Company and said Local 251 in any way except by way of pursuing any claim which they or any other party on their behalf may have in any interpleader action which may be instituted by them or any other party. Counsel may prepare and submit a proper form for such a temporary injunction. All other prayers for a temporary injunction are denied.

The foregoing application for a temporary injunction and the proceedings had there on before me are hereby certified to the Superior Court for Hartford County.