C. B. SNYDER REALTY CO., PLAINTIFF-APPELLANT, v. THE NATIONAL NEWARK & ESSEX BANKING COMPANY OF NEWARK, A CORPORATION, NEWARK & ESSEX BUILDING CORPORATION, A CORPORATION, AND GUSTAVE E. WIEDENMAYER, DEFENDANTS-RESPONDENTS.

Argued October 26, 1953—Decided December 21. 1953.

148

*Mr. Herbert J. Hannoch* argued the cause for the appellant (*Mr. Morris Weinstein*, of counsel; *Messrs. Hannoch, Lasser, Weinstein & Myers*, attorneys).

*Mr. Donald B. Kipp* argued the cause for the respondent The National Newark & Essex Banking Company of Newark (*Mr. Frank C. O'Brien*, of counsel; *Messrs. Pilney, Hardin & Ward*, attorneys).

*Mr. James P. Beggans* argued the cause for the respondent Gustave E. Wiedenmayer (*Mr. Millon A. Dauber*, on the brief; *Messrs. Carpenler, Gilmour & Dwyer*, attorneys).

*Mr. Seymour A. Smith* argued the cause for the respondent Newark & Essex Building Corporation (*Messrs. Hein, Smith & Mooney*, attorneys).

The opinion of the court was delivered by

BURLING, J. This appeal brings up for review summary judgments for the defendants, entered in the Superior Court, Law Division. The action was brought by C. B. Snyder Realty Co., a New Jersey corporation (hereinafter referred to as the plaintiff) against the National Newark & Essex Banking Company of Newark, a banking corporation organized under an act of the Congress of the United States, with offices in Newark, New Jersey, (hereinafter referred to as the bank), Newark & Essex Building Corporation, a New Jersey corporation (hereinafter referred to as the building company), and Gustave E. Wiedenmayer (hereinafter re-

ferred to as Mr. Wiedenmayer) who was an officer (president) and director of the building company and an officer (executive vice-president and cashier) and director of the bank at all times involved in the complaint. The claims of the plaintiff were laid in contract in two counts and were also asserted in a third count sounding particularly in tort, and sought relief the effect of which would compensate the plaintiff, in the sum of $200,000, for its alleged efforts in connection with a somewhat complex corporate transaction involving sale of the building company's stock. From the summary judgments for the defendants the plaintiff appealed to the Superior Court, Appellate Division. Prior to hearing there certification of the appeals was allowed upon our own motion.

At the times covered by the complaint the building company was the owner of the fee of real estate commonly known as the National Newark Building, located at 744 Broad Street, Newark, New Jersey. The bank, individually and in other capacities, controlled 85% of the stock of the building company. The directorates of the two corporations were interlocking. Preliminarily, in November 1951, Mr. Wiedenmayer contacted the plaintiff for the purpose of investigating the possibility of obtaining a purchaser for the National Newark Building on certain specific terms.

A purchaser was located by the plaintiff. There then ensued negotiations between the plaintiff, the purchaser or purchasers it obtained, and Mr. Wiedenmayer (with which negotiations other officers of the defendant corporations were acquainted) whereby the transactions were molded until the proposed sale became one of the stock of the building company. The plaintiff thereupon submitted a purchaser's offer for the stock to the defendant corporations, i. e., to Mr. Wiedenmayer, on March 12, 1952. On March 13, 1952 defendants notified the plaintiff that a better offer had been received from a different prospective purchaser and had been accepted.

The plaintiff's complaint was in three counts as above mentioned. The first count encompassed: (a) claims for

commissions for procuring a purchaser for the real estate owned by the building company, addressed to both the bank (as controlling stockholder) and the building company on their separate contracts; (b) claims for damages for breach of contract with the plaintiff to accept its purchaser and pay the plaintiff $200,000 as compensation for its services in connection with the sale of the building company's stock, addressed to both the bank and the building company as defendants on their separate contracts, and (c) a similar claim for breach of contract as to sale of the real estate. The second count encompassed claims for $200,000 against the bank and the building company for the reasonable value of the plaintiff's services in connection with the entire transaction and negotiations. The first two counts also included claims against Mr. Wiedenmayer "In the alternative and in the event" Mr. Wiedenmayer "was not authorized to act for" the bank and the building company or either of them, based upon his alleged express representation of authority or his alleged implied warranty of authority. The third count involved a claim for relief (in the amount of $200,000 damages) against the bank and Mr. Wiedenmayer sounding in tort and alleging unlawful interference with the plaintiff's contracts and business relationships.

No answer has as yet been filed by any defendant. However various stipulations extending the time to answer or otherwise move with respect to the complaint were filed, interrogatories were propounded to the corporate defendants and answered, and depositions were taken of Mr. Wiedenmayer and other officers and directors of the corporate defendants. Separate motions for summary judgment were filed by each of the defendants, Mr. Wiedenmayer's on September 24, 1952, the bank's on September 30, 1952, and the building company's on October 10, 1952. Each such motion stated two grounds, namely, (1) "the complaint and each and every count thereof fails to state a claim upon which relief may be granted," and (2) "there exists no genuine issue of any material fact and that the said defendant is entitled to judgment as a matter of law." Affidavits, with exhibits

appended thereto and incorporated by reference therein, were filed by the defendants. Answering affidavits were filed (on February 18, 1953) by the plaintiff. By stipulations and by direction of the trial court argument on the motions for summary judgment was adjourned until March 12, 1953.

On March 13, 1953 the Superior Court, Law Division, after argument and consideration of the complaint and of the affidavits and depositions filed on the motions, determined that "the said complaint, affidavits and depositions show palpably that there is no genuine issue as to any material fact challenged and that the respective defendants are each entitled to summary judgment as a matter of law," and ordered entry of summary judgment in favor of each of the defendants against the plaintiff on all counts of the complaint. Final judgment for each of the defendants accordingly was entered on March 14, 1953, and the plaintiff appealed. As hereinbefore noted, the appeals were addressed to the Superior Court, Appellate Division, but were certified prior to hearing there.

The questions involved on these appeals which have been consolidated may be summarized briefly as follows: (1) Did the complaint state a claim or claims for relief against any or all of the defendants? (2) Were there genuine issues as to material facts challenged and were the defendants entitled to summary judgment as a matter of law?

## I.

Relief was sought in the first count of the complaint upon the theory that the bank and the building company were liable to the plaintiff for breach of contract with the plaintiff to accept its purchaser and pay to the plaintiff $200,000 in compensation for the plaintiff's services in connection with the proposed sale of the building company's stock. The gravamen of the complaint is not a case of an alleged contract of sale, but under the peculiar circumstances a contract to obtain a firm *offer* to purchase stock on the

terms propounded by the defendant corporations, which the principal of the plaintiff (*i. e.*, one or both of the corporate defendants) might or might not accept. The crux of the plaintiff's case as presented on this appeal is that whether or not there was a contract entered into with the purchaser the plaintiff obtained, the plaintiff had fully performed its separate agreement with the corporate defendants and was entitled to its agreed compensation.

██ Corporations, like natural persons, are bound only by the acts and contracts of their agents done and made within the scope of their authority. *Leggett v. N. J. Manufacturing and Banking Co.*, 1 *N. J. Eq.* 541, 553 (*Ch.* 1832). It is settled that a corporation is bound by the act of an officer or agent to the extent the power to do that act has been conferred upon him: (1) expressly (a) by the corporate charter, (b) by the by-laws of the corporation, or (c) by the corporate action of the stockholders or board of directors; (2) by implication (a) from powers expressly conferred or (b) incidental thereto; or (3) where the act is within the apparent powers which the corporation has caused those with whom its officers or agents have dealt to believe it has conferred upon them. *Erie R. R. Co. v. S. J. Groves & Sons Co.*, 114 *N. J. L.* 216, 219 (*E. & A.* 1935). In the latter category the settled rule as reiterated in the *Erie R. R. Co.* case, *supra*, is stated in *American Well Works v. Royal Indemnity Co.*, 109 *N. J. L.* 104, 108 (*E. & A.* 1932) as follows:

"The rule is that the principal is bound by the acts of his agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. The question in every case depending upon the apparent authority of the agent is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question; and when * * * the party, relying upon such apparent authority, presents evidence which would justify a finding in his favor, he is entitled to have the question submitted to the jury. * * *"

 Adjectively, the pertinent principles as to the application of *Rule* 3:56–3 (now *R. R.* 4:58–3) concerning the allowance of summary judgment, were expressed in *Mayflower Industries v. Thor Corp.*, 15 *N. J. Super.* 139, 155–157 (*Ch. Div.* 1951), affirmed for the reasons expressed by Judge Francis, in the Superior Court, Chancery Division, 9 *N. J.* 605 (1952), as follows:

"*Rule* 3:56–3 provides that summary judgment shall be granted only 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'

The quoted language of this rule was taken from *Federal Rule* 56(c). Under the construction of the federal courts, this language was not designed 'to cut litigants off from their right of trial by jury if they really have issues to try,' and summary judgment should be granted only where 'no genuine issue remains for trial.' *Chappel v. Goltsman*, 186 *F.* 2d 215, 218 (*C. C. A. 5th Cir.* 1950). The matter cannot be decided on the affidavits of the parties where the facts are in dispute or where conflicting factual inferences may be drawn from them. *Arnstein v. Porter*, 154 *F.* 2d 464 (*C. C. A. 2d Cir.* 1946) ; *Chappel v. Goltsman, supra.* 'Affidavits * * * are of value only when they indicate the nonexistence of factual issues and they have no value when they attempt to resolve a factual issue in favor of one of the parties.' *Kaiser Co. v. Ric-Wil Co.*, 95 *Fed. Supp.* 54, 55 (*D. C. N. D. Ohio* 1950)."

\* \* \* \* \* \* \* \*

The opinions of the federal courts conform with the rule which was applied in New Jersey both before (*Cross Co. v. Margolis*, 136 *N. J. L.* 453 (*Sup. Ct.* 1948) ; *Scarano v. Scarano*, 132 *N. J. Eq.* 362 (*Ch.* 1942) ; *Federal Deposit Ins. Corp. v. Goodman*, 31 *A.* 2d 36 (*Ch.* 1942), affirmed 133 *N. J. Eq.* 64 (*E. & A.* 1942) ; *Berger v. Interstate B & L Assn.*, 121 *N. J. L.* 507 (*E. & A.* 1939)), and after *Rule* 3:56–3 was adopted (*Hodes v. Dunsky*, 5 *N. J. Super.* 333 (*App. Div.* 1949) ; *Geiger v. Metz*, 11 *N. J. Super.* 134 (*Law Div.* 1950) ; *Templeton v. Glen Rock*, 11 *N. J. Super.* 1 (*App. Div.* 1950) ; *Lionshead Lake, Inc. v. Wayne Twp.*, 9 *N. J. Super.* 83 (*App. Div.* 1950))."

 Further, all pleadings shall be so construed as to do substantial justice. *R. R.* 4:8–6 (formerly *Rule* 3:8–6). A party may set forth two or more statements of a claim alternatively or hypothetically either in one count or in separate counts, and when two or more statements are made in the alternative the pleading is not made insufficient by

the insufficiency of one or more of the alternative statements. R. R. 4:8–5 (b) (formerly *Rule* 3:8–5(b)). The complaint must be considered in the light of these rules, although it is well settled that the elements of a claim must be pleaded—the requirement for stating the essentials of a cause of action has not been abandoned. *Grobart v. Society for Establishing Useful Mfrs.*, 2 *N. J.* 136, 150–152 (1949).

The affidavit of Mr. Alfred G. Wirtz, secretary of the building company during the times covered by the complaint, adopts as an exhibit a copy of the by-laws of said company. These by-laws provide: "The property, business and affairs of the Corporation shall be managed and controlled by its Board of Directors" (Art. IV, sec. 1); that said board may appoint an executive committee which "may exercise the powers of the directors in the management of the business. affairs and property of the Corporation during the intervals between the meetings of the Board of Directors" with power to "make such rules and regulations for its own government and relating to its own procedure and for the conduct of the business brought before it as it shall see fit" (Art. V, sec. 1); the president in addition to being chief executive officer "shall have general and active management of the property, business and affairs of the corporation subject to the supervision and control of the Board of Directors and Executive Committee" (Art. VI, sec. 3) and "The President * * * shall have power to sign and execute on behalf of the Corporation, deeds, conveyances and contracts, and any and all other documents requiring execution by the Corporation" (Art. VI, sec. 8). These by-laws grant to the president the usual powers of the office found in most corporations.

Mr. Wirtz in his affidavit stated that there had been no express authorization by the board of directors for any officer of the building company to enter into any agreement to pay compensation in connection with the sale of either the real estate or the stock of the building company. The affidavit of Mr. John N. Page, who had been a director and vice-president of the building company during the time

in question was to the same effect. The depositions filed were similar in character. Both the affidavits filed on behalf of the defendants and the depositions contain assertions that there was no express authority for Mr. Wiedenmayer, as president of the building company, to employ the plaintiff for the purposes stated in the complaint. The plaintiff's affidavits filed oppose these conclusions as to the interpretation of the by-laws of the building company. Further, the affidavits of Mr. Clinton B. Snyder and Mr. Harry Cassman, filed on behalf of the plaintiff, state that Mr. Wiedenmayer expressly stated to them during the course of the negotiations that he had authority to act for the corporate defendants. The defendants assert that such declarations, if made, were not binding on the corporate defendants. The rule in this respect was reiterated in *Mueller v. Seaboard Commercial Corp.*, 5 *N. J.* 28, 37 (1950), as follows:

"It is undoubtedly true that agency cannot be proved merely by the extra judicial declarations of the person whose agency is sought to be proved. *Van Genderen v. Paterson Wimsett Thrift Co.*, 128 *N. J. L.* 41 (*E. & A.* 1941)."

Although we there recognized that "statements made *dum fervet opus* by an agent are admissible as evidence against the principal," such statements alone are insufficient to warrant a factual finding of express authority. As set forth in the *Restatement of the Law of Agency, section* 285:

"Evidence of a statement by an agent concerning the existence or extent of his authority is not admissible against the principal to prove its existence or extent, unless it appears by other evidence that the making of such statement was within the authority of the agent or, as to persons dealing with the agent, within the apparent authority or other power of the agent."

See *Van Dusen Aircraft Supplies, Inc. v. Terminal Construction Corp.*, 3 *N. J.* 321, 328 (1949).

For the same fundamental reasons we find that there was insufficient evidence of express authority from the bank to present a factual question for the jury. The bank's articles of association authorize its board of directors to elect a

president and vice-president, to elect or appoint a cashier and such other officers and clerks "as may be required to transact the business" of the bank, "to define the duties of the officers" and to make all by-laws proper and convenient for the "entire management and administration of its affairs." The bank's by-laws provide: "The President shall be responsible to the board of directors for the conduct of the business of the bank" and "shall be an *ex officio* member of every committee of the board, except the Examining Committee, unless the board expressly directs otherwise" (sec. 12); "The Cashier shall be responsible for all the moneys, funds and valuables of the Bank * * *" (sec. 14); special meetings of the board could be called by either the president or the cashier (sec. 19), and "The Board shall have power to define the duties of any officer or clerk, and the manner in which the affairs of the bank shall be conducted" (sec. 22). The board of directors had adopted regulations for the calendar years 1951 and 1952 stating: "Every transaction in securities for the bank's account amounting to over $200,000 shall be approved by the Investment Committee before commitment is made, except that the President, Executive Vice-President, or Vice President in charge of investments" was authorized to buy or sell certain special securities (not including the stock of the building company) in excess of $200,000. Again, resort is had by the plaintiff to alleged extra-judicial statements of Mr. Wiedenmayer as well as to the exhibits and depositions on file. The pertinent principles of law have been discussed *ante*. These affidavits together with the bank's articles of association, by-laws, and the regulations of the board of directors fail to present a factual question of express authority.

As president of the building company, Mr. Wiedenmayer had "general and active management of the property, business and affairs of the Corporation subject to the supervision and control of the Board of Directors and Executive Committee" (By-laws, Art. VI, sec. 3, *ante*). Mr. Wiedenmayer in his affidavit denied express authorization to employ the plaintiff. The affidavits filed on behalf of the plaintiff assert

that he so employed the plaintiff and that his authority is to be implied from the facts adduced in the interrogatories and depositions. We find nothing in the interrogatories or depositions from which could be inferred an implied authority in Mr. Wiedenmayer to enter into this agreement with the plaintiff. Authority to enter into contracts of an extraordinary nature, outside the regular custom and usage of business, cannot arise by implication, *Savarese v. Pyrene Manufacturing Co.*, 9 *N. J.* 595, 603 (1952). Here the sale of the building company's sole asset was certainly not a matter of an ordinary nature within the usual course of business.

As executive vice-president of the bank, Mr. Wiedenmayer clearly was authorized to enter into *binding* contracts concerning assets of the bank up to $200,000. As cashier he was at least custodian of its securities. Further, the affidavit of Mr. Jones, a bank director, indicates that at the meeting of the directors on February 20, 1952 a committee was appointed, *inter alia*, "to consider the Bank's investment in the Building Corporation" in the absence of the bank's president, Mr. Cowan. Mr. Jones stated however that as a member of the committee so appointed he understood it had no authority to bind the bank in any way, and that the committee never met. Mr. Cowan, president of the bank, in his affidavit stated that for some time prior to February 20, 1952 he "was aware that certain persons had evidenced to Mr. Wiedenmayer an interest in acquiring the National Newark Building" and that the committee was appointed to "consider the Bank's investment." Mr. Sommers, a bank director, by affidavit averred that the bank's investment committee never approved or met to consider any proposal for the sale of stock of the building company. Implied powers vested in corporate officers are only those which are necessary or proper to enable the officer to perform the duties of his office. *Beach v. Palisade Realty and Amusement Co.*, 86 *N. J. L.* 238, 241 (*E. & A.* 1914). We fail to see where any such implied authority could be found here.

We do, however, find sufficient evidence from which it might be inferred that Mr. Wiedenmayer had the apparent

authority to bind each corporation to the extent of employment of the plaintiff, if not to the extent of binding it to a stock sale of the scope involved in the negotiations. On deposition Mr. Wiedenmayer testified that real estate people "naturally * * * would come to me" as president of the building company or as an officer of the bank, because they would "come to the officer who was in charge of the matter." There is clearly evidence in his depositions an effort to qualify the extent of his exact authority, but there is adequate recitation of facts to determine that it was demonstrated "palpably" that there was a genuine issue as to his apparent authority. There is also testimony (on deposition) of Mr. Cowan that Mr. Cowan or Mr. Wiedenmayer carried on stock and other negotiations for the bank, although these negotiations did not reach final consummation of purchase until after approval by the board of directors. Further, Mr. Cowan testified on deposition sufficiently to raise the inference that he as president of the bank was aware of Mr. Wiedenmayer's activities in connection with the negotiations pertinent to this matter. The depositions of Mr. Egner, a director of the building company and member of its executive committee raise a similar inference in connection with that defendant. The plaintiff's affidavits filed in opposition to the defendant's motions for summary judgment assert, and are not controverted in this respect, that the plaintiff relied on Mr. Wiedenmayer's apparent authority. It was palpably shown that there was a genuine issue of fact as to Mr. Wiedenmayer's apparent authority to bind the corporate defendants in connection with the agreement to employ the plaintiff as alleged in the complaint.

## II.

The first count of the complaint also includes a claim, in the alternative, against Mr. Wiedenmayer personally upon his alleged representations of authority to bind the corporate defendants to pay the plaintiff the allegedly

agreed compensation of $200,000, amount of which as herein-before mentioned, is not in dispute.

The affidavits filed on behalf of the plaintiff expressly aver that Mr. Wiedenmayer made such representations and that the plaintiff relied thereon. Mr. Wiedenmayer by affidavit and deposition denies this. Clearly there is a disputed issue of fact in this respect even in the event final judgment ultimately is entered in favor of the corporate defendants under this count.

The applicable law is well settled. It is stated by Mr. Justice Wachenfeld with detailed analysis of authorities in *Fuller v. Melko*, 5 *N. J.* 554, 558 (1950) as follows:

> "One who assumes to act as agent for another impliedly warrants his authority to do so, but where he fully discloses the facts con-stituting his authority, he may not be held liable either on the contract or for breach of implied warranty."

There palpably appears to be a genuine issue of fact as to Mr. Wiedenmayer's assumption of authority and as to his disclosure if such there was, of facts constituting his authority.

### III.

As hereinbefore recited, the first count of the com-plaint also incorporated the plaintiff's claims against the bank and the building company for compensation in con-nection with an alleged contract to obtain a purchaser for the *fee* of the land and premises adverted to as the National Newark Building, 744 Broad Street, Newark, N. J. Upon the complaint, interrogatories and answers thereto, and depositions and affidavits on file, there palpably appears to be no genuine issue as to the fact that the bank was a major stockholder (and in that and various other capacities controlled 85% of the stock) of the building company, and the fact that the latter owned the fee of said real estate. Although there are writings included in the record as ex-hibits, there is nothing advanced to show compliance by

the plaintiff with *R. S.* 25:1-9 which is the statute of frauds relating to agreements for the payment of compensation in connection with real estate transactions. Summary judgment against the plaintiff was therefore proper with respect to the claims in the first count laid on the premise of compensation for obtaining a purchaser for the fee. The plaintiff admits this is so as to the building company and that this claim is not addressed to Mr. Wiedenmayer. The statute is also effective to defeat this claim against the bank on the theory of agency. The statute (*R. S.* 25:1-9, *supra*) requires written confirmation where the proposed sale is "for or on account of the owner," and there is no such confirmation in the record. *Cf. Rossy v. Phillips*, 3 *N. J* 226 (1949). Action against the bank in connection with the plaintiff's obtaining an alleged purchaser for the fee of the National Newark Building could only prevail upon the theory that the bank was acting as the agent for the building company, and in that event the bar of the statute arises.

We do not determine whether the procedure by which the defense of the statute of frauds was asserted was the proper course to pursue under the practice obtaining in our courts since September 15, 1948. Compare *R. R.* 4:8-3 and *R. R.* 4:15-2. No adjective question was advanced on these appeals in that respect.

## IV.

The second count of the complaint is laid upon the theory of *quantum meruit*. Paragraph 24 of the first count, which is incorporated by express reference in the second count, specifically pleads the alleged *contract* to pay plaintiff $200,000 for its services. This theme is clearly followed through the subsequent paragraphs of the first count. Neither in the first count nor in the second count is there any allegation to the contrary.

In *Moser v. Milner Hotels, Inc.*, 6 *N. J.* 278, 280-281 (1951) this court held:

"Having pleaded an express contract, the plaintiff cannot without showing a rescission, recover on *quasi* contract. It is a 'well

settled rule that an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject. The parties are bound by their agreement, and there is no ground for implying a promise. It is only when the parties do not agree that the law interposes and raises a promise. When an express contract exists, there must be a rescission of it before the parties will be remitted to the contract which the law implies, in the absence of that agreement which they made for themselves.' *Voorhees v. Executors of Wood-hull*, 33 *N. J. L.* 494, 496-497 (*E. & A.* 1869) ; *Osterling v. Cape May Hotel Co.*, 82 *N. J. L.* 650, 653 (*E. & A.* 1912) ; *Pericin v. Denburg's Modern Bakery*, 130 *N. J. L.* 547, 553, [554] (*E. & A.* 1943) ."

We find our decision in the *Moser* case, *supra*, controlling under the circumstances of this case. An appropriate order or judgment should be entered in favor of the defendants by the trial court in this respect under *R. R.* 4:58–3, *R. R.* 4:58–4 and *R. R.* 4:55–2, as to the second count.

## V.

The third count of the complaint sounds in tort. No claim against the building company is asserted in this count, but both the bank and Mr. Wiedenmayer are named as defendants thereto.

The third count states the plaintiff's claim for interference with its alleged agreement with the building company, namely, that the building company would accept the offer of plaintiff's purchaser to purchase the building company stock and thereby enable the plaintiff to receive out of the purchase money its $200,000 compensation and the plaintiff's alleged similar agreement with the bank. The facts asserted by the complaint in connection with this alleged agreement are expressly confirmed in the affidavits filed on behalf of the plaintiff. The same facts are denied in the affidavits filed on behalf of the defendants, the bank and Mr. Wiedenmayer. A genuine dispute as to these facts is demonstrated in this circumstance alone, without detailed repetition of the matters testified to on deposition or averred in the affidavits. This count, of course, depends upon the existence

in fact of the contract or contracts alleged. This in turn depends upon disputed facts concerning the authority of Mr. Wiedenmayer or of the other officers or committees of the corporate defendants, to bind either or both of said corporations to the acceptance of an offer of this category.

We recognize the rule laid down in *Mayflower Industries v. Thor Corp.*, 15 *N. J. Super.* 337, 339–340 (*Ch. Div.* 1951), affirmed 9 *N. J.* 605 (1952), *supra*, that tort liability may be imposed for interference with prospective advantage, even where contractual relations between the corporations involved were not complete because one of the corporations had not gone through the formality of signing the agreement. Compare *Louis Schlesinger Co. v. Rice*, 4 *N. J.* 169, 179, 182 (1950). The principal claims of the plaintiff were expressly laid by the plaintiff upon an alleged agreement to obtain an offer to purchase stock upon terms propounded by the corporate defendants or either of them. The claim under this third count is grounded in a different theory, namely that the corporate defendants or either of them (by Mr. Wiedenmayer) independently agreed with the plaintiff that if the offer obtained by the plaintiff was the high offer it would be accepted, and that the bank and Mr. Wiedenmayer interfered with such acceptance. In such circumstances it becomes necessary for the plaintiff to prove that the corporate officer or officers making that antecedent agreement to accept such offer could bind either or both of his or their corporate principals thereby. In this respect there exist disputed issues of fact.

Insofar as this count is additionally premised upon the plaintiff's alleged earlier performance in obtaining a purchaser of the *fee* of the National Newark Building, *i. e.*, upon interference by the bank and by Mr. Wiedenmayer, judgment for the defendants was properly entered. The plaintiff, as hereinbefore mentioned, admitted it could not recover commissions from the building company in view of the statute of frauds, *R. S.* 25:1–9 *supra*. Plaintiff on the tort phase of the case asserts interference with that contract. Recovery upon the theory of unlawful interference with a

contract, where the contract if it existed would be unenforceable by virtue of the statute of frauds, is opposed to the spirit of that statute and may not be allowed.

### CONCLUSIONS

For the reasons above expressed the judgments of the Superior Court, Law Division, are reversed. The complaint sets forth claims for relief, *R. R.* 4:8–1 (formerly *Rule* 3:8–1), upon which relief can be granted. *Cf. R. R.* 4:12–2(*e*) (formerly *Rule* 3:12–2(*e*)).

The reversal of the trial court's action in entering summary judgment for the defendants is subject to these qualifications, namely, that insofar as the first count relates to claims for compensation for the sale of real estate and insofar as the third count relates to claims for interference with agreements concerning the sale of real estate, the claims so premised are barred by *R. S.* 25:1–9, *supra*; the second count should be stricken, or the claims therein advanced be adjudged barred, for the reasons expressed in Part IV of this opinion, *ante*; and the first count presents claims only as limited herein.

The causes will be remanded to the Superior Court, Law Division, for the entry of appropriate judgments or orders under the pertinent rules, including but not limiting said court to application of *R. R.* 4:58–3, *R. R.* 4:58–4, and *R. R.* 4:55–2, *supra*, consistent with this opinion, and for further proceedings in accord with the appropriate rules relating to the practice and procedure in the Superior Court.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING and JACOBS—5.

*For affirmance*—Justice HEHER—1.