**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0974-24

OSONDU OPARA,

    Plaintiff-Appellant,

v.

SALVATORE DISPASQUALE
and FIRST CLASS AUTO
SALVAGE,

    Defendants-Respondents.

_____

Submitted November 3, 2025 – Decided January 2, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. DC-002702-24.

Osondu Opara, self-represented appellant.

Zabel and Associates, LLC, attorneys for respondent First Class Auto Salvage, have not filed a brief.

Law Office of Robert G. Swan, LLC, attorney for respondent Salvatore Dispasquale, has not filed a brief.

PER CURIAM

Plaintiff Osondu Opara appeals from a trial court judgment dismissing his complaint against defendant First Class Auto Salvage ("First Class Auto") following a bench trial. Plaintiff alleged his 1997 Ford Econoline van was wrongfully towed and scrapped by defendant Salvatore Dispasquale. He sought damages for the loss of the van and its equipment from First Class Auto, alleging Dispasquale was its agent or employee.

Plaintiff contends the trial court committed error by 1) finding no cause of action as against First Class Auto and dismissing his complaint after trial; and 2) granting defendant's motion to vacate summary judgment previously entered in his favor. Based on the determinations which follow, we affirm.

I.

The facts which follow were taken from the motion and trial record. Plaintiff commenced a civil action against Dispasquale and First Class Auto, alleging conversion and demanding damages for the value of his van and its equipment. Both defendants answered and denied involvement. Prior to trial, First Class Auto moved to dismiss plaintiff's complaint, arguing Dispasquale was not its agent or employee at the time of the incident. Plaintiff moved for summary judgment claiming Dispasquale was the agent or employee of First Class Auto and wrongfully towed and scrapped his van. The court scheduled

2

oral argument and notified the parties by way of ecourts notice. Plaintiff appeared at argument but First Class Auto's attorney failed to appear. The court denied First Class Auto's motion to dismiss but granted summary judgment to plaintiff and awarded damages because First Class Auto failed to oppose the motion. The trial court subsequently granted First Class Auto's timely motion for reconsideration, vacated the judgment, and scheduled the matter for a bench trial.

At trial, plaintiff testified he purchased a 1997 Ford Econoline van for business use and regularly parked it at a property in Trenton, with the property owner's permission. Plaintiff discovered the van missing from its parking spot. After plaintiff obtained footage from a nearby security camera, he discovered his vehicle was towed. Based on the video footage, plaintiff believed the van was towed by a vehicle marked as "First Class Auto Salvage." When he called the number on the tow truck, plaintiff asserted Dispasquale answered the call and identified himself as the owner stating, "this is First Class Auto" and informing plaintiff the van had been towed.

Plaintiff alleged he visited the salvage yard for First Class Auto, where he met with Dispasquale who represented himself as being "the president of First Class Auto," admitted that he towed the van, and presented plaintiff with a bill

3

of sale for $300. Plaintiff reported the theft of his van to the Trenton Police Department. The Trenton Police Department conducted an investigation and documented that Dispasquale removed the van and that it had been scrapped at First Class Auto's salvage yard. Plaintiff submitted photographs of the tow truck, the bill of sale for his van, and the police report to the court as evidence.

On cross examination, plaintiff was questioned about whether the truck that towed the van actually displayed a logo for Quick Junk Car Removal—not First Class Auto Salvage—and whether the number he called was connected with First Class Auto. Plaintiff disagreed the van displayed the name "Quick Junk Car Removal" and the phone number did not belong to First Class Auto.

Following plaintiff's testimony, Manoj Ranasinghe testified on behalf of First Class Auto. Ranasinghe testified that he acquired a majority ownership of First Class Auto in March 2018 and that Dispasquale ceased to have operational authority following his termination as an independent contractor in April 2018. He testified Dispasquale was formally terminated in a letter dated April 27, 2018, because he "found out [Dispasquale] was doing things that he [was] not supposed to do on the side." Ranasinghe stated, despite Dispasquale remaining a minority shareholder and being listed on state corporate documents as president and registered agent, he relinquished all practical control and had no

A-0974-24

office presence or managerial duties after his termination in April 2018. Ranasinghe asserted the inaccurate status of the company owners on the documents was mainly due to the details of the buy-out agreement, which stated Dispasquale would remain on the corporation as a minority shareholder until Ranasinghe finished the buyout of the debts he was paying off for Dispasquale as part of the buy-out.

Ranasinghe further testified that the tow truck shown in the photograph offered by plaintiff belonged to Quick Junk Car Removal, a separate business owned by Dispasquale, and that the phone number displayed was Dispasquale's personal cell phone number. Ranasinghe denied any involvement by First Class Auto in the removal or scrapping of plaintiff's van and testified that no company employees or agents participated in the alleged incident.

On cross examination, plaintiff questioned Ranasinghe about Dispasquale's status as a minority shareholder and being listed on First Class Auto's corporate filings. However, Ranasinghe maintained that such retention was merely technical and Dispasquale was not involved in operations or agency after 2018.

Following trial, the court found First Class Auto was not responsible for the towing or scrapping of plaintiff's van. The court determined the truck that

A-0974-24

towed plaintiff's van displayed "Quick Junk [Car] Removal on the side of it, and that there was a phone number on it different from the one advertised by as being used by First Class Auto." Although the court noted that plaintiff credibly testified that he called the number on the truck, and Dispasquale answered "First Class Auto," it found this statement to be a "fraudulent representation by [] Dispasquale rather than using his own company of his own name."

The court determined Dispasquale was not an agent of First Class Auto, concluding the relationship terminated in 2018 when Dispasquale was instructed to no longer act as an employee of First Class Auto. The court rejected plaintiff's contentions that because Dispasquale was a minority shareholder, he was an officer of the company and thus an agency relationship existed. The court's finding that no agency existed was also based on the truck not displaying the name First Class Auto Salvage, nor displaying its correct phone number.

Thereafter, the court entered an order dismissing plaintiff's complaint with prejudice.

II.

A-0974-24

We begin by setting forth the principles which guide our analysis. Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review on appeal, "we [will] not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . ." Seidman v. Clifton Sav. Bank, SLA, 205 N.J. 150, 169 (2011) (second alteration in original) (quoting In re Trust Created By Agreement Dated December 20, 1961, ex. rel. Johnson, 194 N.J. 276, 284 (2008)).

In reviewing the judge's findings, "[w]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (alteration in original) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). However, we owe no deference to the judge's interpretation of the law and the legal consequences that flow from established facts. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)); EnviroFinance Grp., LLC v. Env't Barrier Co., LLC, 440 N.J. Super. 325, 339 (App. Div. 2015).

III.

7

We first address plaintiff's contention that the court erred by finding Dispasquale was not an agent and did not have actual or apparent authority to bind First Class Auto. An agency relationship exists "when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." N.J. Law.'s Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010) (quoting Restatement (Third) of Agency § 1.01 (A.L.I. 2006)). "Generally, an agent may only bind his principal for such acts that 'are within his actual or apparent authority.'" Ibid. (quoting Carlson v. Hannah, 6 N.J. 202, 212 (1951)).

In support of his contention that Dispasquale had actual authority from First Class Auto, plaintiff points to: (1) Ranasinghe's testimony that he became CEO/managing member of First Class Auto on January 8, 2021 and Dispasquale was still the CEO at the time of the van's seizure; (2) the certificate of reinstatement filed by First Class Auto designating Dispasquale as its president and registered agent; and (3) Dispasquale was a 49% shareholder of First Class Auto at the time of the seizure. We are not persuaded by any of these contentions.

A-0974-24

"Actual authority occurs 'when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" N.J. Lawyer's Fund for Client Prot., 203 N.J. at 220 (quoting Restatement (Third) of Agency § 2.01).

While the trial court did not specifically address the buyout agreement, the court concluded that "the agency relationship terminated in April 2018 when Dispasquale was told no longer to act as an employee of First Class Auto." The trial court also rejected plaintiff's contention simply because Dispasquale was a minority shareholder, an agency relationship existed. As we have previously stated, a key aspect of whether an alleged agent has actual authority is whether he reasonably believes the principal directed him to act. While it is true that corporate filings listed Dispasquale as the president and registered agent, we concur with the trial court those filings were merely technicalities and were insufficient to prove Dispasquale reasonably believed First Class Auto authorized him to act on its behalf, especially after he was explicitly informed in the termination letter[1] he was not to act as a contractor and a separate

---

[1] We note the termination letter dated April 27, 2018 is not included in the record before us but was admitted into evidence and relied upon by the court.

agreement existed concerning debt payment was required to be satisfied prior to filing the corporate documents changing ownership. We conclude the trial court relied upon substantial, credible evidence in the trial record in finding Dispasquale had no actual authority over the operations of First Class Auto. Ranasinghe's testimony that Dispasquale was informed he had no authority to act as an employee for First Class Auto was found to be credible and persuasive and the trial court's rejection of this contention was not error.

Next, we address plaintiff's assertion that Dispasquale had apparent authority to act on behalf of First Class Auto. A person may be an agent by apparent authority, based on the manifestations of the authority by the principal. Sears Mortg. Corp. v. Rose, 134 N.J. 326, 338 (1993) (citing C.B. Snyder Realty Co. v. Nat'l Newark Banking Co., 14 N.J. 146, 154 (1953)). The Restatement defines apparent authority as "the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03; see also N.J. Law.'s Fund for Client Prot., 203 N.J. at 220.

To establish a claim against a principal based on apparent authority, the plaintiff must establish that: (1) the appearance of authority was created by the

conduct of the alleged principal and cannot be established alone and solely by the conduct of the agent; (2) a third party relied on the agent's apparent authority for a principal; and (3) the reliance was reasonable under the circumstances. Mercer v. Weyerhaeuser Co., 324 N.J. Super. 290, 318 (App. Div. 1999).

Under apparent authority, liability is imposed on the principal because the principal's actions mislead the public into believing that relationship or authority exists. Basil v. Wolf, 193 N.J. 38, 67 (2007). This doctrine focuses on the reasonable expectations of a third party with whom an agent deals. N.J. Law.'s Fund for Client Prot., 203 N.J. at 220 (quoting Restatement (Third) of Agency § 7.08 cmt. b). Therefore "a court must examine the totality of the circumstances to determine whether an agency relationship existed even though the principal did not have direct control over the agent." Ibid. (quoting Sears Mortg. Corp., 134 N.J. at 338).

Plaintiff argues that Dispasquale had apparent authority because: (1) he was designated as the president of First Class Auto with the New Jersey Revenue and Enterprise services; (2) the truck and phone number he called belonged to First Class Auto; and (3) Dispasquale told plaintiff that he was president of the company.

11

We conclude these arguments lack merit. In its decision, the trial court found:

> But in terms of agency relationship, there wasn't any agency relationship. The name on the truck wasn't the name of First Class Auto. The only agency that could have -- could be inferred is that Dispasquale used First Class Auto's name when he answered the phone, but that would not match what was on the truck.
>
> So, even more to the point about what could be inferred about who must have known something, here the plaintiff must have known he was calling Quick Junk [Car] Removal and not First Class Auto, and so it makes it just as easily a question as to why he didn't know that he wasn't calling them and that there was a problem with First Class Auto being the named defendant.

Based on our review of the trial record, we conclude substantial, credible evidence supports the court's factual and legal determinations that First Class Auto did not provide apparent authority to Dispasquale. While it was established Dispasquale held himself out as the president of First Class Auto, the evidence failed to show any conduct by First Class Auto that Dispasquale had authority to act on behalf of the company. In addition, the evidence at trial showed the truck displayed "Quick Junk Car Removal"—a company owned by Dispasquale—and the number on the truck was Dispasquale's personal cell phone number further belying plaintiff's argument that Dispasquale had authority to act on behalf of it.

12

A-0974-24

Additionally, while the corporate filings list Dispasquale as its president and registered agent, Dispasquale was not authorized to act on behalf of First Class Auto since 2018 when he was terminated and informed not to represent to anyone he was affiliated with the company.  Dispasquale alone touted himself as "president" and no evidence existed that First Class Auto directly or indirectly authorized Dispasquale to make this representation nor were any proofs offered of previous instances where Dispasquale made this representation with the knowledge of First Class Auto.  We conclude there is no basis to second-guess the discretionary finding of the trial court regarding this issue.

Plaintiff next asserts the trial court committed reversible error by finding the truck that towed his vehicle belonged to Quick Junk Car Removal, not First Class Auto.  We conclude this argument is without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  We add only, it is clear from the still photo taken from the security camera video that the tow truck displays "Quick Junk Car Removal" on the side.  Although plaintiff may genuinely believe the truck displayed First Class Auto's logo, we conclude the trial court clearly did not err in finding that the truck displayed "Quick Junk Car Removal" on its door.

13

IV.

We now turn to plaintiff's contention the court erred by granting First Class Auto's motion for reconsideration to vacate summary judgment previously entered in favor of plaintiff. The decision whether to grant a motion to vacate a judgment is "left to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (citing Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). Our courts have also recognized that a defendant's promptness in moving to vacate a judgment is a factor that supports granting the motion. Reg'l Constr. Corp. v. Ray, 364 N.J. Super. 534, 541 (App. Div. 2003). That is so because of the importance we attach to securing a decision on the merits. Davis v. DND/Fidoreo, Inc., 317 N.J. Super. 92, 100-01 (App. Div. 1998).

Based on the above legal principles, we conclude the trial court did not abuse its discretion by granting First Class Auto's timely motion for reconsideration which essentially requested the summary judgment and damages order entered against it be vacated. The trial court determined genuine issues of material fact existed in the record, defendant attorney's non-appearance at oral argument was excusable and a trial on the merits was appropriate.

A-0974-24

To the extent we have not specifically addressed any of plaintiff's remaining legal arguments, we conclude they are of insufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division