ST. PAUL FIRE AND MARINE INSURANCE COMPANY, PLAINTIFF-RESPONDENT, v. INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, A PENNSYLVANIA CORPORATION, DEFENDANT-APPELLANT.

Argued November 9, 1959—Decided March 21, 1960.

*Mr. Philip M. Lustbader* argued the cause for defendant-appellant (*Messrs. Schneider, Lustbader & Morgan,* attorneys; *Mr. M. Marvin Soperstein,* on the brief).

*Mr. Maurice Jordan Price* argued the cause for plaintiff-respondent.

The opinion of the court was delivered by

SCHETTINO, J.   This is a contract action in which defendant appeals from a Superior Court, Law Division judgment which requires it to pay one-half the expenses incurred by plaintiff in defending certain claims against an insured whom both covered by separate policies.   The cause was tried by a judge without a jury.   While the appeal was pending in the Appellate Division, we certified it on our own motion.

New Jersey Natural Gas Company was self insured for $5,000.   Plaintiff insured that Company for amounts between that figure and $15,000 for claims relating to bodily injury and property damage.   Another carrier, not a party to this action, insured the Gas Company for liability in excess of $15,000 and up to $25,000.   Defendant insured the Company for claims between $25,000 and $500,000.

Plaintiff's policy provides that it would bear the expenses of defending any suit brought against the Gas Company for bodily injury or property damage.   Defendant's policy does not require it to defend but gives it the right and opportunity to associate in the defense and control of any claim or suit when that claim or suit may involve defendant's coverage.   That policy also provides that defendant shall pay no costs if the claims are adjusted prior to trial for a sum not in excess of the retained limits; and even where the claims appear likely to exceed the retained limits, defendant shall not be obligated unless it first gives consent to incurring the charge.   But if defendant consents to "trial court proceedings continuing" and if the settlement or judgment exceeds the retained limits, then it agrees to contribute to the costs in the ratio that its proportion of liability bears to the whole amount of the settlement or judgment.

On July 23, 1953 the Gas Company had an accident covered by the above policies upon which suit was instituted. Plaintiff undertook to defend. Plaintiff after that trial demanded of defendant a proportionate share of the costs and expenses of the trial and defendant refused to pay. The costs and expenses of that trial involved in the present case amount to $10,256.84. Plaintiff holds an assignment of the Gas Company's alleged claim against defendant.

Plaintiff claims that defendant is liable (a) pursuant to an express contract (defendant's policy with the insured), and (b) also because defendant requested plaintiff to proceed with the defense and impliedly agreed to reimburse plaintiff for a proportionate share of legal expenses, or (c) on a *quasi*-contractual theory.

██ Plaintiff's claims manager testified that during the course of the litigation against the Gas Company he had many dealings with defendant's representatives. He wrote 26 letters to defendant's claims department, frequently attaching documents such as a copy of summons and complaint, plaintiff's correspondence concerning the claim, copies of investigation reports, interrogatories, depositions, file materials and photographs. He and others in his company had numerous telephone discussions with defendant's claims manager and other members of defendant's claims department.

Additionally, plaintiff followed certain suggestions made by defendant's representatives, *i. e.*, that a third party be joined as defendant, that other material be sent to defendant, that plaintiff follow certain lines of investigation and that a copy of a bill rendered to plaintiff by an investigator be sent to defendant. In answer to the latter request a copy was sent with a letter containing the following:

"* * * While you have not requested it we attach copies of the other allocated claim expenses we have paid to date.

As you know we have heretofore billed you at the conclusion of the case on these cases, but if it is your wish to have copies of the

various bills with the reports as we send them to you, please so inform us so that we may handle in accordance with your wishes."

Upon receipt of the bill, defendant's agent wrote to plaintiff:

"We have yours of Sept. 23, 1955. It is all right to send in the bills at the conclusion of the case, as you have done heretofore in other cases."

During the first day of the trial against the Gas Company (and at plaintiff's prior suggestion) defendant had a representative in attendance who participated in discussions concerning a suggested settlement of $100,000. He rejected it on behalf of his company and requested plaintiff to continue the trial. His request was complied with and a verdict of no cause of action resulted.

The trial court correctly denied recovery on the basis of defendant's policy of insurance stating:

"It is elementary that a written contract must be construed to carry out the intent of the parties thereto as expressed in the contract *as written*. Here the obligation was to contribute only where there was either a judgment or a settlement and there was neither. It follows, since the Court may not rewrite the policy that there can be no recovery by St. Paul, either as subrogee or assignee of the Gas Company."

We find defendant's policy clearly and unambiguously delineates its obligation to be precisely as found by the trial court.

The trial court, however, found for plaintiff on the theory of *quasi*-contract, stating:

"* * * the basis of liability springs from the benefit conferred upon the person sought to be held therefore. One cannot seriously argue that [defendant] was not the beneficiary of the judgment of 'no cause' in the action against the Gas Company. It consented that the suit go to trial, its correspondence leaves no doubt on that score. As stated in 12 *Am. Jur., Sec.* 6, 'Contracts': 'The intention of the parties in such case is entirely disregarded, * * * in the case of quasi contracts the duty defines the contract * * *. The obligation is imposed despite, and frequently in frustration of, their

(the parties) intention.' Our courts have recognized the above guides. In *Rabinowitz v. Mass. Bonding & Insurance Co.*, 119 *N. J. L.* 552 [556] (*E. & A.* 1938) : 'It is a well established rule of law that when a person, with expectation of remuneration, confers benefits of service * * * upon another, under such circumstances that it would be unjust and inequitable for the person receiving the benefits to retain them without compensation therefor, the law will raise a *quasi*-contractual obligation to support a recovery for the value of such benefits conferred.' "

■ There is a distinct difference between *quasi*-contractual obligation (implied in law) and an obligation implied in fact. "The term *quasi* is introduced as a weasel word, that sucks all the meaning of the word that follows it; but this is a fact that the reader seldom realizes." 1 *Corbin, Contracts,* § 19, *p.* 38 (1950). *Quasi*-contractual obligations are imposed by the law for the purpose of bringing about justice without reference to the intention of the parties. 1 *Williston, Contracts,* § 3A, *p.* 13 (*Jaeger ed.* 1957) ; 1 *Corbin, supra,* § 19, *p.* 37. They "rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do." 17 *C. J. S. Contracts* § 6, *p.* 324. Indeed they are sometimes imposed even against a clear expression of dissent. 1 *Corbin, supra,* § 19, *p.* 38; 12 *Am. Jur., Contracts,* § 6, *p.* 503. See also *Rabinowitz v. Massachusetts Bonding & Insurance Co.,* 119 *N. J. L.* 552, 556 (*E. & A.* 1937) ; *Williston, supra,* § 3A, *pp.* 13–14; *Restatement, Restitution,* § 1.

■ We see no basis for a *quasi*-contractual liability. If we place to one side the different question whether defendant impliedly made a separate agreement to pay plaintiff, the essential requirement of unjust enrichment of defendant does not appear. This is so because in the absence of such separate agreement, the cooperation extended by plaintiff could be accepted by defendant simply as performance of the insured's agreement. *Cf.* 1 *Williston, supra,* § 102A, *p.* 383. Under defendant's policy it was entitled to receive

the cooperation of the insured or another acting for it. Hence, from defendant's point of view, it cannot be said that it accepted a benefit which enriched it beyond its contractual right. Therefore, there could be no recovery in *quasi*-contract.

This brings us to the theory of a contract implied-in-fact, adverted to but not actually decided by the trial court. In 1 *Williston, supra,* § 3, *pp.* 8–9 the author states:

"Contracts are express when their terms are stated by the parties and are often said to be implied when their terms are not so stated. The distinction is not based on legal effect but on the way in which mutual assent is manifested."

An implied-in-fact contract is in legal effect an express contract. "These terms, [expressed and implied] however, do not denote different kinds of contracts, but have reference to the *evidence* by which the agreement between the parties is shown." *Skelly v. Bristol Sav. Bank,* 63 *Conn.* 83, 26 *A.* 474, 19 *L. R. A.* 599 (*Sup. Ct. Err.* 1893); *Corbin, supra,* § 18, *p.* 33. See also, *McInerney v. Detroit Trust Co.,* 279 *Mich.* 42, 271 *N. W.* 545 (*Sup. Ct.* 1937); *Anderson v. Biesman & Carrick Co.,* 278 *Ill. App.* 507, 4 *N. E. 2d* 639 (*App. Ct.* 1936); *American La France Fire Engine Co., Inc. v. Borough of Shenandoah,* 115 *F. 2d* 866 (3 *Cir.* 1940); *Bush v. Lane,* 161 *Cal. App. 2d* 278, 326 *P. 2d* 640, 641 (*Ct. App.* 1958); 17 *C. J. S. Contracts* § 4b, *p.* 318. As summarized by Mr. Justice Heher in *Borough of West Caldwell v. Borough of Caldwell,* 26 *N. J.* 9, 29 (1958); "The true implied contract consists of an obligation 'arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words,' * * *."

There is nothing in the record to indicate that plaintiff was aware of the specific terms of defendant's policy in which its obligation to contribute to the cost of defense depended upon the outcome, *i. e.*, whether there was liability to the claimant (either by settlement or judgment) or a

judgment in favor of the assured. Nor can we assume the terms of defendant's covenant were so universal in the industry that plaintiff must have known of the precise distinction defendant drew in its policy. It, of course, can readily be found that in fact plaintiff expected contribution while in fact defendant intended to contribute only in strict accordance with its policy.

The ultimate issue, however, does not turn on the undisclosed intention of the actors but rather upon the significance of their actions as they would be viewed by a reasonable man engaged in the insurance industry. In 1 *Williston, supra,* § 36, *pp.* 101–2 we note that:

"The common illustration of [offers implied in fact] is where performance of work or services is requested. If the request is for performance as a favor, no offer to contract is made, and performance of the work or services will not create a contract; but if the request is made under such circumstances that a reasonable person would infer an intent to pay for them (and this is always a question of fact under all the circumstances of the case), the request amounts to an offer, and a contract is created by the performance of the work. And even though no request is made for the performance of work or service, if it is known that it is being rendered with the expectation of pay, the person benefited is liable. It is a question of fact if services are accepted whether a reasonable man in the position of the parties would understand that they are offered in return for a fair compensation, or would rather suppose either that they are offered gratuitously, or if not, that the recipient might think so."

Thus, if the conduct of defendant, objectively viewed, reveals a promise to pay, defendant must meet that obligation whatever may have been its unrevealed expectation. 1 *Corbin, supra,* § 106, *pp.* 334–335; 3 *Corbin, supra,* § 538, *pp.* 44–45. As the trial court did not decide the issue of a contract implied-in-fact, we should not attempt to decide that factual issue without the benefit of the views of the trial judge. Moreover, the issue now being focused, the opportunity should be afforded to explore the factual area fully.

The record reveals the existence of other evidence which may enlighten the central issue as we see the case. We refer to plaintiff's offer to prove that with respect to some

six prior cases in which both carriers were similarly situated, defendant was billed and paid for its proportionate share of expenses at the conclusion of the matters. Defendant successfully objected to this offer of proof on the ground that in those instances there was a settlement or judgment for the claimant whereas here the ultimate result was a judgment for the assured. We think the evidence should have been received for such light as it may furnish upon the question whether a reasonable observer of the total scene would understand that the parties in fact made the alleged contract. *Cf. Leitner v. Braen,* 51 *N. J. Super.* 31 (*App. Div.* 1958).

As Judge Learned Hand stated in *Callan v. Andrews,* 48 *F.* 2d 118, 119 (2 *Cir.* 1931) a promise to pay can be inferred "from the earlier relations of the parties." By reason of its conduct described above and the prior transactions, the necessary finding might well be made that defendant should have realized that plaintiff would expect contribution unless specifically informed that contribution would not be made if the suit were successfully defended. 12 *Am. Jur., Contracts,* § 5, *pp.* 501–502. Unless the covenant is in fact in general use or unless there is a similar business custom, it would seem strange for plaintiff's ultimate rights against defendant to fail if plaintiff's diligent efforts to defend proved successful against a claimant suing the assured whereas plaintiff would recover if its efforts proved unsuccessful in protecting defendant's excess coverage.

In determining whether the parties thus in fact entered into a contract for the division of the costs of defense, there are a number of facets which, under the circumstances of this case, may well be explored. The parties are both engaged in the insurance field. Excess insurance is, of course, an established branch of the industry. Whether the provisions of defendant's policy are standard in the field, we do not know, but evidence concerning that subject may well bear upon the intention of the parties as revealed by their objective behavior. The import of the prior transactions

between the litigants should be evaluated in the light of the customary practices and understandings in the field as they may be known or legally chargeable to them, and to the extent to which the prior transactions in fact conformed to such practices.

Another subject for inquiry is whether plaintiff furnished consideration to defendant for the promise it claims and seeks to enforce. Did plaintiff, on the strength of defendant's promise, do anything more or different from what it would or should have done in discharge of its own obligations to the insured? If not, was there some other benefit which the parties can be said to have intended to be plaintiff's consideration for the contract? 1 *Williston, supra,* § 102, *p.* 375.

Ultimately, of course, the burden of proof is upon plaintiff to establish upon the total facts that the contract sued upon was made and in assessing plaintiff's proof the trial court should bear in mind that the parties are not laymen but insurance carriers.

Reversed and remanded for action not inconsistent with this opinion with costs of the appeal to abide the outcome of the new trial.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.