70 N.J. Super. 520 (1961)
176 A.2d 23
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM LIFE INSURANCE COMPANY AND STATE FARM FIRE AND CASUALTY COMPANY, ILLINOIS CORPORATIONS AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS,
v.
ARTHUR NEIL ANDERSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1961.
Decided December 11, 1961.
*521 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. David W. Hanis argued the cause for appellants.
Mr. Irving C. Evers argued the cause for respondent (Mr. Jacob Schneider, attorney; Mr. Evers, on the brief).
*522 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs appeal from the Chancery Division order denying their motion for summary judgment. The parties have agreed that we treat the appeal as if defendant had also moved for summary judgment and his motion been denied. At issue is the interpretation of plaintiffs' insurance agency contract.
Plaintiffs are licensed to transact insurance business in this State and have been authorized by the Commissioner of Banking and Insurance to use their trade name, State Farm Insurance Companies. On August 15, 1955 defendant entered into a standard form written agreement with plaintiffs by virtue of which he was appointed and became their local agent. Defendant voluntarily resigned on January 31, 1960, thereby terminating the written agreement and his association with plaintiffs.
On March 25, 1960 plaintiffs filed their verified complaint alleging that ever since his termination of service, defendant had willfully violated the terms of the agency agreement, hereinafter mentioned, by failing to surrender plaintiffs' records, files and policyholder lists used during his representation of the insurance companies, soliciting and serving policyholders, selling and "switching" plaintiffs' policyholders to other insurance companies, and interfering with and confusing policyholders by continuing to make use of the several plaintiff insurance companies' trade names and designations, as well as letterheads and mailing pieces. Plaintiffs sought to enjoin defendant's violation of the restrictive covenant of his agency contract, restrain the several described acts of unfair competition, obtain a turnover of all policyholder lists and other records and materials, and recover damages and costs. Defendant answered and by way of counterclaim sought an accounting for and recovery of service fees, renewal commissions and termination benefits claimed to be due him under the agency agreement.
After considering the parties' counter-affidavits, the Chancery Division granted plaintiffs an interlocutory injunction *523 restraining defendant from soliciting their customers and using their policyholder lists, and directing that all future telephone directory listings of a certain telephone number be changed to exclude any identification with or reference to plaintiffs. The trial judge noted that defendant in his affidavit admitted he had been soliciting business from plaintiffs' policyholders and had been using a list of those policyholders in that connection. The exhibits accompanying plaintiffs' affidavits not only established that this was so but also that defendant had been using plaintiffs' letterheads, imprinted with the name "The Anderson Agency, Inc.," in soliciting business.
Some months after the entry of the interlocutory judgment, plaintiffs moved for summary judgment. In denying the motion the trial judge said that defendant was entitled to establish at final hearing, if he could, the validity of the claims set out in his counterclaim. The action was pretried the day the order of denial was entered, the pretrial order reciting defendant's admission that he had used the telephone number complained of. We granted plaintiffs' application for leave to appeal the order denying their motion for summary judgment.
Plaintiffs have voluntarily abandoned all claims to affirmative relief, so that there is left remaining for disposition defendant's counterclaimed rights to remuneration under the agency agreement.
The question of defendant's right to recover renewal commissions is no longer in the case. That matter has been resolved between the parties. Since we are to determine the appeal as though there had been cross-motions for summary judgment, we are concerned only with the construction of the agency agreement. Is defendant entitled to service fees and termination benefits? If so, the amounts due him have been stipulated.
The trial judge was in error in holding the case to final hearing so that defendant could establish the validity of his claims. The agency agreement is admittedly valid, *524 so that we are not faced with a possible factual issue, as where the express contract is found to be void and resort must be had to quasi-contract and quantum meruit recovery, e.g., as in Shapiro v. Solomon, 42 N.J. Super. 377 (App. Div. 1956). Nor is there any need to take proofs of surrounding circumstances in aid of interpretation, see Casriel v. King, 2 N.J. 45, 50 (1949), for defendant does not plead or rely upon any alleged special surrounding circumstances. Since there is no dispute as to the terms of the agency contract, its construction was for the court. Korb v. Spray Beach Hotel Co., 19 N.J. Super. 226, 230 (Law Div. 1952), affirmed 24 N.J. Super. 151 (App. Div. 1952). Indeed, the parties concede that the question under review is solely one of law.
Plaintiffs' obligation to pay defendant service fees is set out in sections 2 and 4 of plaintiff automobile insurance company's schedule of payments:
"2. For services rendered in any month while this Agreement is in force, in assisting policyholders and cooperating with adjusters in reporting and handling claims and otherwise servicing policyholders, the Local Agent shall be paid an amount equal to Ten Percent (10%) of the net premium collections, as hereinafter defined, received and recorded by the Company during the sixth preceding month on policies credited to the Local Agent during the month for which such payment is computed irrespective of whether such policies were secured by the Local Agent. * * *

* * * * * * * *
4. * * * Payments for the agents services under Section 2 hereof for the particular month of termination by death or otherwise shall be pro-rated and paid as soon as ascertainable and shall constitute the final payment due under this Schedule for such services."
Defendant claims that under these provisions the company merely deferred for six months payment for services rendered in any month; that he is entitled to be paid the service fees which had been withheld from him for the last six months of his employment.
Defendant's argument contradicts the plain language of the contract. Section 2 reads, "For services rendered in *525 any month while this Agreement is in force * * *," followed by the method of computing the fee. It does not say, as defendant claims, that service fees "shall be paid for any month while the agreement is in force." And section 4 would indicate that the month of termination marks the final payment of service fees, prorated on the basis of the net premium collections during the sixth preceding month. Since defendant performed no services after he terminated his agreement with plaintiffs on January 31, 1960, he cannot recover service fees for work he did not do.
An agency contract provision similar to the one just quoted was construed in State Farm Mutual Automobile Ins. Co. v. Hobbs, 268 S.W.2d 420 (Ky. Ct. App. 1954), where appellee, as does defendant here, contended that the insurance company was always six months behind in the payment of service fees, so that payment of such fees should continue for six months after the termination of his services. The court held that to adopt appellee's theory would be to ignore the express provisions of the agreement, and reversed the judgment of the trial court awarding appellee service fees for the six months preceding the termination of the agency agreement.
The same result was reached in Robertson v. State Farm Mutual Automobile Ins. Co., 156 F. Supp. 541 (D.C.N.D. Ala. 1957), and State Farm Mutual Automobile Ins. Co. v. West, 181 F. Supp. 779 (D.C.W.D. Ark. 1960), involving an agency contract provision almost identical with the one under consideration.
Defendant relies upon State Farm Mutual Automobile Ins. Co. v. Dempster, 344 P.2d 821 (Cal. D. Ct. App. 1959). That case is distinguishable. It involved an appeal from an injunction against former agents of the insurance company which prohibited them from soliciting policyholders of the company and using information obtained in the course of their former relationship with it. The trial court had also ordered the company to pay termination benefits to the agents in lieu of all other post-termination *526 payments, including service fees. The judgment below was affirmed with one modification, which concerned the application of one of the restraints. What the court had to say about the monthly service fee was dictum. As a matter of fact, the court misconstrued the nature of the service fee by describing it as, in substance, the equivalent of a 10% commission on business produced by the agent. This was clearly a misreading of the agency contract.
The claim for commissions being out of the case, we pass to defendant's claim that he is entitled to termination benefits. The agency agreement provided in section IV, paragraph B, subsection 4:
"4. Payment to the Agent under the provisions of B may be made in 5 annual installments or less, at the option of the Company, the first payment to be made within 90 days following the date of termination provided all records and files used by the Agent in his representation of the Company and all unused materials and supplies furnished to him by the Company have been surrendered to the Company or its authorized representative and provided the Agent has agreed in writing not to service policyholders of the Company or to compete with the Company or to interfere with its business for one full year from the date of termination."
Defendant accepted this provision, as well as all other provisions of the agreement, when he signed the "Local Agent's Acceptance of Appointment" at the time he became a company agent. Among those other provisions was section 1, relating to "Agent's Agreements and Duties," paragraph G of which stated:
"G. All records, files, manuals, blanks, forms, materials and supplies furnished to the Agent by the Companies or on their behalf shall be and remain the property of the Companies, and the Agent shall be deemed the bailee thereof for the use and benefit of the Companies and shall safely keep and preserve such property except as consumed in normal agency operations. Upon termination of this agreement, the Agent shall deliver to the Companies or their authorized representative all such property remaining in the Agent's possession or control and shall thereafter refrain from further solicitation *527 for or servicing of policyholders of the Companies and from interfering in any way for a period of one year with the existing policies and policyholders."
Plaintiffs' position is that although termination benefits would ordinarily be paid to an agent upon separating from the companies, defendant, because of his willful violation of the conditions precedent set out in section IV(B)(4) quoted above, is barred from such recovery. As noted, defendant, in his affidavit filed in opposition to the motion for interlocutory relief, admitted he had been soliciting the business of plaintiffs' policyholders and had been using a list of those policyholders in that connection. He also, in the pretrial order, admitted use of the telephone number complained of  a number listed under plaintiffs' name. Further, as we have observed, he used plaintiffs' letterhead, with "The Anderson Agency, Inc." imprinted, in writing to plaintiffs' policyholders. These clearly amounted to violations of the conditions precedent in the last mentioned section.
Defendant argues that to deny him termination benefits would amount to a forfeiture. We are not here concerned with forfeiture. Parties to a contract are at liberty to agree on one or more conditions precedent upon which their liability will depend. Kennedy v. Westinghouse Electric Corp., 29 N.J. Super. 68, 78 (App. Div. 1953), affirmed 16 N.J. 280 (1954). Defendant bound himself to return all records and files used by him as company agent, and not to service policyholders or interfere with plaintiffs' policies and policyholders for a full year. He did not live up to his commitment and therefore is not entitled to termination benefits.
Defendant's reliance upon State Farm Mutual Automobile Ins. Co. v. Dempster, above, is misplaced. The award of termination benefits in that case is distinguishable, if for no other reason than that plaintiff had successfully obtained actual compliance with the conditions of the contract through an equity decree. Such was not the case here; *528 plaintiffs obtained only partial relief through a limited interlocutory judgment; they never obtained a turnover of their policyholder lists, and defendant had for a time openly and willfully competed with them for their policyholders' business after he terminated his services.
The matter is remanded to the Chancery Division for the entry of judgment in plaintiffs' favor on defendant's counterclaim.