716 F.2d 220
 SUBURBAN TRANSFER SERVICE, INC., Plaintiff-Appellant,
v.
BEECH HOLDINGS, INC., Defendant-Appellee.
Charles A. STANZIALE, Jr., Trustee for Suburban Aviation
Service, Inc., Plaintiff-Intervenor,
v.
BEECH HOLDINGS, INC., a Kansas corporation and Suburban
Transfer Service, Inc., a New Jersey corporation, Defendant.
 No. 82-5219.
 United States Court of Appeals,
Third Circuit.
 Argued April 26, 1983.
Decided Sept. 7, 1983.
 
 Rudy B. Coleman (argued), Rosemary A. Hall, Francis X. Ferrara, Carpenter, Bennett & Morrissey, Newark, N.J., for Suburban Transfer Service, Inc.
 Matthew Farley (argued), Glenn Pantel, Shanley & Fisher, P.C., Newark, N.J., for Beech Holdings, Inc.
 Before HUNTER, HIGGINBOTHAM, Circuit Judges, and STAPLETON,* District Judge.OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 Suburban Transfer Service, Inc. ("Transfer") brought this action against Beech Holdings, Inc. ("Beech") claiming that Beech was liable for the cost of certain capital improvements made to facilities at the Teterboro Airport, Teterboro, New Jersey. Transfer made its claim as a third-party beneficiary to an agreement entered into by Suburban Aviation Service, Inc. ("Aviation"), Pan American Airways, Inc. ("Pan Am"), and Beech. On cross-motions for summary judgment, the district court entered summary judgment for Beech and dismissed Transfer's complaint. We will affirm.
 
 
 2
 * Pan Am operates the Teterboro Airport in Teterboro, New Jersey under an agreement with the Port Authority of New York and New Jersey. On December 1, 1974, Pan Am, Aviation, and Beech entered into a Use and Occupancy Agreement ("Agreement") under which Pan Am granted Aviation the right to use and occupy specified areas of the Teterboro Airport until December 31, 1999. At the time the Agreement was entered into Aviation was a retail dealer of aircraft manufactured by Beech Aircraft Corporation, the parent corporation of Beech. In addition to its retail operations, Aviation also serviced and stored aircraft, provided flight instructors, and sold aircraft parts and equipment.
 
 
 3
 Under section 35 of the Agreement, Beech undertook an obligation to enter into a new, but substantially identical, use and occupancy agreement with Pan Am (the "New Agreement") in the event of a termination of the Agreement between Pan Am and Aviation. App. at 67. The New Agreement was to be only for a two-year term. At Beech's option, however, the New Agreement could be extended for the balance of Aviation's original term through December 31, 1999. Id.
 
 
 4
 As a condition of its occupancy under the Agreement, Aviation was required to make certain capital improvements to render the premises suitable for its purposes and business operations. App. at 38, 73. In anticipation that Aviation might have to obtain a loan to finance those improvements, section 34 of the Agreement provided:
 
 
 5
 For purposes of this Agreement User's loan (hereinafter referred to as the "Loan") shall mean borrowing of an amount not in excess of Two Hundred Thousand Dollars ($200,000.00), the proceeds of which are to be used by the User for the purposes of performing any construction authorized to be performed by User under this Agreement. The Loan shall be repaid over a term of at least ten (10) years but in no event for a period exceeding the term of this Agreement, with equal installments covering payment of principal and interest, provided, however, that the Loan shall be in the form of a Note and Security Agreement as set forth in Exhibit C attached hereto and made a part hereof, shall be made no later than December 31, 1977 and the financing entity granting the Loan shall hereinafter be referred to as "the Lender."
 
 
 6
 App. at 67 (emphasis added). The Agreement further provided in section 35.4 that if Pan Am terminated its agreement with Aviation, Beech would pay the monthly installments on Aviation's loan for the two-year period covered by the New Agreement Beech was required to enter into with Pan Am. App. at 68. In the event Beech elected to extend its occupancy until 1999, it was required under section 35.5 of the Agreement either to pay off the loan or to assume and pay the regular equal installments covering principal and interest on the loan for the remainder of the loan's term. Id.
 
 
 7
 Aviation began occupying the Teterboro Airport in December of 1974. By July of 1975, however, it still had not obtained a loan to cover the cost of the capital improvements it was required to make under the Agreement. Apparently unable to obtain funds from other sources, Aviation began to borrow funds from an affiliate corporation, Transfer, sometime in late 1975. Transfer advanced the funds through a common fund controlled by Industrial Leasing Corporation, the parent company of both Aviation and Transfer. At no time, however, did Aviation and Transfer execute the Note and Security Agreement ("Note") referred to in section 34 of the Agreement. App. at 180.
 
 
 8
 On October 10, 1975, a vice-president of Beech wrote to Aviation and requested information concerning Aviation's plans for borrowing funds and improving the facilities under the Agreement. On October 23, 1975, Richard Brown of Aviation responded, stating in pertinent part: "For the time being, we are borrowing all our money from Suburban Transfer Service, Inc., an affiliated company which is temporarily to be considered as the secured party. I will forward you more plans on our long term borrowing when I am able to get back to work on a full time basis." App. at 162.
 
 
 9
 Aviation allegedly continued its efforts to find a commercial lender but was unsuccessful. Transfer continued to advance its funds, however, and construction of the improvements at the airport progressed. Following internal discussions by Transfer concerning its status under the Agreement, see app. at 199, 201, on September 23, 1976, counsel for Aviation wrote a letter to the Port Authority of New York and New Jersey, with a copy to Beech, stating: "[We] do hereby advise that 'the Lender' to be inserted in the Note and Security Agreement referred to as Exhibit 'C' in the referred to Use and Occupancy Agreement is Suburban Transfer Service, Inc." App. at 163. Despite that letter, however, Aviation and Transfer never formally executed, nor demanded that Beech or Pan Am endorse, the Note referred to in section 34.
 
 
 10
 On March 1, 1980, Pan Am terminated Aviation's right to use and occupy the premises because of Aviation's insolvency.[1] On March 2, 1980, Beech assumed the use and occupancy of the facilities pursuant to section 35 of the Agreement. Transfer thereafter sought repayment from Beech of the monies it had advanced Aviation. Beech denied any liability.[2]
 
 
 11
 On November 17, 1980, Transfer filed an amended complaint in the United States District Court for the District of New Jersey[3] in which it sought recovery from Beech as a third-party beneficiary to the Agreement among Pan Am, Aviation, and Beech. It also sought relief on grounds of unjust enrichment and estoppel. On the same date the district court granted a motion to intervene filed by the Trustee in Bankruptcy for Aviation ("Trustee"). On December 15, 1980, the Trustee filed a complaint seeking repayment by Beech for the capital improvements made by Aviation at Teterboro, and seeking a declaratory judgment that Transfer was not a lender under the Agreement.
 
 
 12
 On January 6, 1982, Beech filed a motion for summary judgment and dismissal of all claims against it brought by Transfer and the Trustee. On February 11, 1982, Transfer filed a cross-motion for partial summary judgment. After hearing arguments on both motions, the district court orally granted summary judgment for Beech and denied partial summary judgment for Transfer. The district court held that proper execution of the Note referred to in section 34 was a condition precedent to Beech's obligation to pay back any loan under the Agreement. Because Aviation and Transfer had never properly executed the Note, Beech was not liable under the Agreement for money advanced to Aviation by Transfer. On February 24, 1981, the district court entered formal orders granting Beech's motions for summary judgment against Transfer and the Trustee.[4] Transfer appeals.[5]
 
 II
 
 13
 * On appeal Transfer argues that the district court erred as a matter of law in holding that Beech was not liable to Transfer under section 35 of the Use and Occupancy Agreement. It asserts that it loaned money to Aviation in full accordance with the requirements of section 34 of the Agreement and thus that it qualifies as a "Lender" as defined in that section. It contends that it is a third-party beneficiary to Beech's obligation under the Agreement to pay to a Lender, upon termination of Aviation's occupancy by Pan Am, the installments on the loan obtained by Aviation for improvements at Teterboro Airport. See Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253, 447 A.2d 906 (1982). Transfer argues that the "provided, however" language in section 34, cited by the district court as creating a condition precedent to Beech's obligation, merely establishes "guidelines, limitations and parameters of the Loan," and therefore the lack of a properly executed Note does not prevent Transfer from asserting its rights under the Agreement. Accordingly, it contends that the district court erred in granting summary judgment in favor of Beech.[6]
 
 
 14
 We can not agree. The language in section 34 stating "[t]he Loan shall be repaid over a term of at least ten (10) years but in no event for a period exceeding the term of this Agreement, with equal installments covering payment of principal and interest, provided, however, that the Loan shall be in the form of a Note and Security Agreement as set forth in Exhibit C," clearly establishes a condition precedent[7] to the creation of a valid loan as defined in the Agreement. See app. at 67 (emphasis added). The words "provided, however," have been historically read by courts as establishing conditional clauses in written agreements. Hohenberg Brothers Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex.1976); 3A A. Corbin, Corbin on Contracts Sec. 639 (1951); see State v. Anonymous, 34 Conn.Sup. 679, 682, 388 A.2d 840, 842 (Super.Ct.1978); cf. Lehigh Valley Railroad v. Chapman, 35 N.J. 177, 183, 171 A.2d 653, 657, cert. denied, 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed.2d 192 (1961) (one of the classic words creating an estate on condition is "provided"). The language used in section 34 does more than set "guidelines" for the loan; it establishes the requirements which must be met for the loan to be properly created at all. See United National Indemnity Co. v. Sangiuliano, 38 N.J.Super. 400, 405, 119 A.2d 35, 38 (1955) (notice required as a condition precedent to insurer's obligation); 5 S. Williston, A Treatise on the Law of Contracts Sec. 671 (1961). Absent execution of the Note, no valid loan under section 34 exists, and Beech's obligations under section 35.4 and 35.5 simply do not accrue.
 
 
 15
 Construing the execution of a valid Note as a condition precedent to Beech's obligation under section 35 is also consistent with the structure of the Agreement as a whole. The Agreement sets out the general obligations of Aviation, Pan Am, and Beech concerning the use and occupancy of the airport facilities. Attached to the Agreement are exhibits which detail and limit the obligations set out in the body of the Agreement.[8] Exhibit C details in very specific terms the type of loan that Aviation was required to obtain, the terms of any security interest to be granted the lender, the covenants agreed to by Aviation, its obligations on default, and the required endorsements of Beech and Pan Am. App. at 75. In section 3.6 of the Note, the respective rights and responsibilities of the Lender, Aviation, and Beech concerning the loan are specified in the event Beech occupies the airport facility. As Beech argues, failure to construe the execution of the Note identified in Exhibit C as a condition to Beech's obligation under section 35.4 and 35.5 of the Agreement would make Beech liable as a guarantor of Aviation's indebtedness on any terms that Aviation chose to agree to with a third party. See Restatement (Second) of Contracts Sec. 227(1) (1981).
 
 
 16
 In light of the language of section 34 of the Agreement and in light of the Agreement's overall structure, we agree with the district court that the proper execution of the Note was a condition precedent to Beech's obligation to pay off the loan under section 35. That Note was never executed, thus precluding any action by Transfer for enforcement of Beech's obligation to repay. Dikowski v. Metropolitan Life Insurance Co., 128 N.J.L. 124, 128, 24 A.2d 173, 175 (1942); Naimo v. La Fianza, 146 N.J.Super. 362, 371-72, 369 A.2d 987, 992 (1977) (third-party beneficiary, in attempting to take advantage of a contract made for him by another, must take it subject to all legal defenses of the obligor). Accordingly, the district court properly entered summary judgment in favor of Beech on the first count of Transfer's amended complaint.[9]
 
 B
 
 17
 Transfer argues that even if execution of the Note was an unexcused condition precedent to Beech's obligation to pay off the loan under the Agreement, Beech should still be held liable under equitable principles of estoppel and unjust enrichment. After examining the applicable legal principles of Fed.R.Civ.P. 56 and New Jersey law, we can not agree.
 
 Equitable Estoppel
 The New Jersey Supreme Court has stated:
 
 18
 Conduct amounting to a misrepresentation or concealment of material facts known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worse gives rise to an equitable estoppel.
 
 
 19
 Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880, 882-83 (1979). The doctrine of equitable estoppel is designed to prevent a party's disavowal of previous conduct if such repudiation "would not be responsive to the demands of justice and good conscience." Id. (quoting West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 153, 141 A.2d 782, 787 (1958)). Detrimental reliance on the part of the party asserting the estoppel is an essential element of a claim for equitable relief. Carlsen, 80 N.J. at 339, 403 A.2d at 882-83; Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449, 217 A.2d 617, 621, cert. denied, 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966); Robbins v. City of Jersey City, 23 N.J. 229, 238, 128 A.2d 673, 678 (1957); Housing Authority v. State, 188 N.J.Super. 145, 149, 456 A.2d 534, 536 (1983); Sinclair Refining Co. v. Bergen County, 103 N.J.Super. 426, 433, 247 A.2d 484, 488 (1968).
 
 
 20
 Transfer claims that Beech, based on its dealings with Aviation, should be equitably estopped from denying its obligation to repay the money advanced by Transfer for improvements at the Teterboro Airport. Transfer has never claimed, however, either in its complaint or in the affidavits and papers submitted in response to Beech's motion for summary judgment, that it relied on Beech's actions when it advanced the money to Aviation. See app. at 158-59, 261, 265, 342. The only discussion of Transfer's advance of funds was in the minutes of the Board of Directors' meetings of Industrial Leasing Corp. Transfer points to nothing in the minutes indicating that funds were transferred in reliance on Beech's representations.[10] Absent any assertion of proof of reliance, Transfer's claim of estoppel must fail. Carlsen, 80 N.J. at 341-42, 403 A.2d at 883-84; Housing Authority, 188 N.J.Super. at 149, 456 A.2d at 536. Thus the district court was correct in granting summary judgment for Beech. Reeves v. City of Jackson, 532 F.2d 491, 494 (5th Cir.1976); 6 J. Moore, Moore's Federal Practice p 56.04 (1982).
 
 Quasi-contract/Unjust Enrichment
 
 21
 Under New Jersey law, "[t]he constructive or quasi -contract is the formula by which enforcement is had of a public duty raised to prevent unjust enrichment or unconscionable benefit or advantage." West Caldwell v. Caldwell, 26 N.J. 9, 29, 138 A.2d 402, 412 (1958); see St. Paul Fire & Marine Insurance Co. v. Indemnity Insurance Co., 32 N.J. 17, 22, 158 A.2d 825, 827-28 (1960); Bergen County Sewer Authority v. Borough of Bergenfield, 142 N.J.Super. 438, 454-56, 361 A.2d 621, 629-30 (1976); Callano v. Oakwood Park Homes Corp., 91 N.J.Super. 105, 219 A.2d 332 (1966). Quasi-contractual obligations are imposed by the law for the purpose of bringing about justice. St. Paul Fire & Marine Insurance, 32 N.J. at 22, 158 A.2d at 827. Quasi-contract liability will not be imposed, however, if an express contract exists concerning the identical subject matter. The parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties. Van Orman v. American Insurance Co., 680 F.2d 301, 310-11 (3d Cir.1982); C.B. Snyder Realty Co. v. National Newark & Essex Banking Co., 14 N.J. 146, 162-63, 101 A.2d 544, 553 (1953); Moser v. Milner Hotels, Inc., 6 N.J. 278, 280, 78 A.2d 393, 394 (1951). But see Power-Matics, Inc. v. Ligotti, 79 N.J.Super. 294, 306, 191 A.2d 483, 490 (1963).
 
 
 22
 Under those principles Transfer's claim for quasi-contractual liability based on unjust enrichment must fail as a matter of law. The Agreement entered into by Aviation, Beech, and Pan Am, under which Transfer has claimed rights as a third-party beneficiary, is a valid unrescinded contract which sets out the relative rights and responsibilities of the parties. Under section 35 of the Agreement, Beech is obligated to pay installments on a validly created loan as defined in section 34. Because a condition precedent to creation of that loan never occurred, we have held that Beech has no obligation under the Agreement to pay Transfer for the funds it advanced to Aviation. Accordingly, Beech has not received any benefit it was not entitled to under the terms of the agreement. Thus the "essential requirement of unjust enrichment of defendant does not appear.... [F]rom defendant's point of view, it cannot be said that it accepted a benefit which enriched it beyond its contractual right. Therefore, there could be no recovery in quasi -contract." Van Orman, 680 F.2d at 311 (quoting St. Paul Fire & Marine Insurance, 32 N.J. at 22, 158 A.2d at 828); accord C.B. Snyder Realty Co., 14 N.J. at 162-63, 101 A.2d at 553; Moser, 6 N.J. at 280, 78 A.2d at 394. Accordingly the district court did not err in granting summary judgment on Transfer's claim in quasi-contract based on unjust enrichment.
 
 III
 
 23
 The district court's February 24, 1982 order granting Beech's motion for summary judgment against Transfer and denying Transfer's cross-motion for summary judgment will be affirmed.
 
 
 
 *
 Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 On March 13, 1980, a group of creditors filed a petition for involuntary bankruptcy against Aviation. App. at 210-11
 
 
 [2]
 Transfer alleges that it loaned a total of $167,384.68 to Aviation for improvements at Teterboro Airport, $143,160.66 of which was advanced prior to December 31, 1977. App. at 155, 157
 
 
 [3]
 Transfer had filed an original complaint in this action on May 12, 1980. On July 1, 1980, Beech filed a motion to dismiss for, inter alia, failure to state a claim upon which relief could be granted. On July 31, 1980, the district court granted Beech's motion to dismiss and granted leave to Transfer to file an amended complaint
 
 
 [4]
 After the district court had orally granted Beech's motion but prior to its filing of its order, Transfer filed a motion for re-argument pursuant to D.Ct.N.J.R. 12(I). Following the district court's entry of a final order on February 24, Transfer then filed a notice of appeal despite the fact that its motion for re-argument was still outstanding. Because Transfer's Rule 12(I) motion was submitted prior to the filing of the district court's order, however, it was premature and thus ineffective. See Merrell-National Laboratories, Inc. v. Zenith Laboratories, Inc., 579 F.2d 786, 790 (3d Cir.1978); Skill v. Martinez, 91 F.R.D. 498, 516 (D.N.J.1981), aff'd on other grounds, 677 F.2d 368 (3d Cir.1981). Accordingly, Transfer's notice of appeal is timely under the principles of Griggs v. Provident Consumer Discount Co., --- U.S. ----, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)
 
 
 [5]
 The Trustee has not appealed the district court's order granting summary judgment against it in favor of Beech
 
 
 [6]
 Transfer argues in passing that the district court also erred in granting summary judgment because it improperly resolved a material issue of fact concerning the intention of the parties to the agreement. Under New Jersey law the construction of a written document is ordinarily a matter of law for the court unless the meaning is uncertain or ambiguous. Bedrock Foundations v. Geo. H. Brewster & Sons, Inc., 31 N.J. 124, 133, 155 A.2d 536, 541 (1959); Michaels v. Brookchester, Inc., 26 N.J. 379, 387, 140 A.2d 199, 204 (1958); Trucking Employees of N.J. Welfare Fund, Inc. v. Vrablick, 177 N.J.Super. 142, 148, 425 A.2d 1068, 1071 (1980); see Barco Urban Renewal Corp. v. Housing Author., 674 F.2d 1001, 1007-08 (3d Cir.1982). Because, in our view, the language of section 34 is not ambiguous, no question of fact requiring introduction of parol evidence existed, and thus it was proper for the court to decide as a matter of law the proper construction of the contract
 
 
 [7]
 "A condition precedent is a fact or event occurring subsequently to the making of a valid contract which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available." Moorestown Management, Inc. v. Moorestown Bookshop, Inc., 104 N.J.Super. 250, 262, 249 A.2d 623, 630 (1969); State Farm Mut. Auto. Ins. Co. v. Anderson, 70 N.J.Super. 520, 527, 176 A.2d 23, 27 (1961); see Harry's Village, Inc. v. Egg Harbor Township, 89 N.J. 576, 585, 446 A.2d 862, 866 (1982); 3A A. Corbin, Corbin on Contracts Sec. 628 (1951)
 
 
 [8]
 Exhibit B, app. at 73, specifies the construction required to be done by Aviation under section 3 of the Agreement. Exhibit D, app. at 84, specifies the terms of the performance bond required by section 32 of the Agreement
 
 
 [9]
 Transfer also argues that, even assuming the execution of the Note was a condition precedent, that condition should be excused "because the forfeiture resulting from its enforcement is disproportionate to the importance of the conditioned performance." Brief for Plaintiff-Appellant at 30. In support it cites Sec. 229 of the Restatement:
 To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.
 Restatement (Second) of Contracts Sec. 229 (1981). See generally Harker v. McKissock, 7 N.J. 323, 332, 81 A.2d 480, 484 (1951). Because we think, however, that the execution of the Note was a material part of the agreed exchange between Aviation, Pan Am, and Beech, Sec. 229 can not be read as supporting Transfer's position. Cf. Harker, 7 N.J. at 333, 81 A.2d at 485 ("Equitable interposition with the freedom of contract is not justifiable ... unless the agreement works an unconscionable hardship or contravenes natural justice.").
 
 
 [10]
 Transfer contends in its brief that Beech's silence after being put on notice that Transfer was advancing funds to Aviation supports a finding of estoppel. Brief for Plaintiff-Appellant at 28-30. It specifically points to the two letters sent by Aviation stating that it was receiving funds from Transfer. App. at 162, 163. Under New Jersey law, "[e]stoppel may arise by silence or omission where one is under a duty to speak or act." Carlsen, 80 N.J. at 341, 403 A.2d at 883 (emphasis added). We note that Transfer has not claimed before us that Beech was under an affirmative duty to respond to Aviation's correspondence